**UNITED STATES of America,
Plaintiff,**

v.

**Sibert BOONE, Defendant.
Crim. No. 24635.**

United States District Court,
D. New Mexico.

July 13, 1972.

**1032**

Victor R. Ortega, U. S. Atty., Don J. Svet, Asst. U. S. Atty., Albuquerque, N. M., for plaintiff.

Jack L. Love, Federal Public Defender, Albuquerque, N. M., for defendant.

### MEMORANDUM OPINION

BRATTON, District Judge.

Defendant, a Zuni Indian indicted under 18 U.S.C. § 1153 for assault with a dangerous weapon, moves to dismiss the indictment on the ground that section 1153 discriminates against him on the basis of race in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution.

Section 1153, sometimes called the "Major Crimes Act," provides in pertinent part:

Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely * * * as-

sault with a dangerous weapon * * * within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

* * *

As used in this section, the offenses of * * * assault with a dangerous weapon * * * shall be defined and punished in accordance with the laws of the State in which such offense was committed.

Pursuant to the latter part of the section, defendant is to be tried and punished under N.M.S.A. § 40A–3–2, subd. A. (Repl.1964), a portion of the Aggravated Assault statute which reads as follows:

40A–3–2. *Aggravated Assault.*— Aggravated Assault consists of * * * :

A. unlawfully assaulting or striking at another with a deadly weapon;

* * *

Whoever commits aggravated assault is guilty of a fourth degree felony.

A fourth degree felony is punishable by one to five years imprisonment or a fine of up to $5,000 or both. N.M.S.A. § 40A–29–3, subd. D. (Repl.1964).

A non-Indian committing the same offense on a reservation against an Indian would be tried and sentenced by virtue of 18 U.S.C. § 1152, a statute extending to Indian Country the "general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States," except "offenses committed by one Indian against the person or property of another Indian." The applicable law defining assault with a dangerous weapon is 18 U.S.C. § 113(c):

§ 113. *Assaults within maritime and territorial jurisdiction*

Whoever, within the special maritime and territorial jurisdiction of the

United States, is guilty of an assault shall be punished as follows:

\* \* \*

(c) Assault with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse, by fine of not more than $1,000 or imprisonment for not more than five years, or both.

As can be seen, one of the elements of assault with a dangerous weapon under the federal law is intent to do bodily harm, and if defendant Boone were not an Indian, the government would be required to prove this intent at trial. Also, the maximum possible fine under section 113(c) is only $1,000 as opposed to $5,000 under the state law. The bases of defendant's attack on section 1153 are that less proof is required for conviction under the New Mexico statute because intent to do bodily harm is not an element of the state offense, and that the fine under state law is greater. Pointing out that he is subject to the lesser burden of proof and the greater fine only because he is an Indian, Boone asserts that this racial differentiation is unjustifiable and therefore violative of his right to equal protection of the laws.

Defendant's contentions raise three issues: (1) whether the differences between the federal and the state statutes are sufficient to raise an equal protection problem; (2) whether an equal protection claim lies against a federal statute; and (3) whether the racial distinction made by section 1153, if substantial, is justifiable.

## I.

The government urges that because New Mexico law requires proof of intent as an element of aggravated assault, the difference between the New Mexico statute and Section 113(c) is insubstantial. ▉ New Mexico follows the general rule of criminal law that "when an act

is prohibited and made punishable by statute only, \* \* \* the existence of criminal intent is to be regarded as essential, although the terms of the statute do not require it." State v. Austin, 80 N.M. 748, 461 P.2d 230 (Ct.App. 1969). This rule apparently applies to aggravated assault under N.M.S.A. § 40A–3–2, subd. A. State v. Brito, 80 N.M. 166, 452 P.2d 694 (Ct.App.1969); State v. Anaya, 79 N.M. 43, 439 P.2d 561 (Ct.App.1968). However, no New Mexico case has ever interpreted section 40A–3–2, subd. A as requiring proof of specific intent to do bodily harm. *See* Annot.: Intent to do physical harm as essential element of crime of assault with deadly or dangerous weapon, 92 A. L.R.2d 635 (1963). The government does not contend such proof is required, and in view of the *Anaya* case, such a contention would be untenable. In *Anaya,* the New Mexico court of appeals in effect held that proof of intent under the aggravated assault statute is achieved by showing the defendant intended to commit a simple assault and did so with a deadly weapon.[1] Because the simple assault definition does not contain the element of specific intent to do bodily harm, the conclusion follows that such intent is not a necessary element of aggravated assault under New Mexico law.

▉▉ The absence of the element of intent to do bodily harm renders the prosecution's burden of proof less onerous under the New Mexico statute than under section 113(c). The legislative history of the amendment to section 1153 which relegated the offense of assault with a dangerous weapon to state law establishes that this was the intended result of the amendment.

The offense of "assault with a dangerous weapon" is similarly included among the offenses listed in section 1153. The Department of the Interior in the report made to the committee on the bill in the 87th Congress indi-

---

1. N.M.S.A. § 40A–3–1(B) defines simple assault as "any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery; \* \* \*."

cated a desire on the part of that Department that this offense also be defined in accordance with the law of the State where the offense is committed. *At that time, the Department indicated that it felt the definition of the crime of "assault with a dangerous weapon" now included in section 113 of title 18 caused difficulty due to the fact that it included the element of the intent to do bodily harm.* This committee feels that it is logical that the State definition of this offense be made applicable. (Emphasis added.) (1966 U.S.Code Cong. & Admin.News, pp. 3653, 3656).

Because the statute applies only to Indians, an equal protection issue is squarely presented.[2]

## II.

The Fifth Amendment to the Constitution contains no equal protection clause, but the Supreme Court has held that it does prohibit federal discrimination that is "so unjustifiable as to be violative of due process." Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954); Schneider v. Rusk, 377 U.S. 163, 168, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964). Further, the Court's decisions have established that classifications based on race "are inherently suspect and subject to close judicial scrutiny." Graham v. Richardson, 403 U.S. 365, 372, 91 S.Ct. 1848, 1852, 29 L.Ed.2d 534 (1971); Bolling v. Sharpe, *supra*. These policies apply to Indians as well as other racial minorities. Kills Crow v. United States, 451 F.2d 323, 325 (8th·Cir. 1971); Ute Indian Tribe of Uintah and Ouray Reservation v. Probst, 428 F.2d 491, 498 (10th Cir. 1970).

The test for determination of equal protection issues under the Fifth

Amendment was articulated in Bolling v. Sharpe, *supra*. There, the Court held that the racial segregation in District of Columbia schools was "not reasonably related to any proper governmental objective" and thus imposed "a burden that constitutes an arbitrary deprivation of [the black children's] liberty in violation of the Due Process Clause." Applying that holding to the present case, the question is whether the racial distinction embodied in section 1153, by which defendant is subject to conviction upon a lesser burden of proof and potentially to a greater fine, is "reasonably related to any proper governmental objective."

## III.

The United States contends that the differentiation wrought by section 1153 is reasonably related to the governmental objectives inherent in the guardianward relationship between the United States and the Indian people, citing Kills Crow v. United States, *supra*. The defendant in that case was convicted of assault resulting in serious bodily injury under section 1153. At trial, his request for an instruction on the lesser offense of simple assault was denied on the ground that, because that offense was not listed in section 1153, the court was without jurisdiction to consider it. On appeal, Kills Crow contended that such a construction of the statute, by which Indians are denied an instruction available to non-Indians,[3] renders the statute violative of equal protection. The court rejected this contention, stating that the omission of lesser offenses from section 1153 relegated those crimes to the jurisdiction of the tribal courts, thus preserving and enhancing tribal autonomy. The court concluded that since the racial distinction in the statute thus benefitted Indians generally, the discrimination

---

2. Although the maximum confinement would be the same for a non-Indian, the amendment subjects defendant to a potentially greater fine. While not as major a difference as would be a variance in the maximum confinement possible, it is a discrimination based solely on ethnic origin.

3. A non-Indian brought to trial for an offense similar to that committed by Kills Crow would presumably be entitled to an instruction on simple assault because it is one of the offenses included in 18 U.S.C. § 113. See subsection (e) of that section.

against Kills Crow was justified. In effect, the court found the racial classification to be "reasonably related to [a] proper governmental objective."

Other federal appellate cases considering equal protection attacks on section 1153 have sustained the statute either because the distinction challenged was beneficial to Indians generally, Gray v. United States, 394 F.2d 96 (9th Cir. 1968), or because the defendant in the case suffered no disadvantage as a result of the distinction involved. United States v. Burland, 441 F.2d 1199 (9th Cir. 1971); Henry v. United States, 432 F.2d 114 (9th Cir. 1970); Mull v. United States, 402 F.2d 571 (9th Cir. 1968).

In the case at bar, however, the racial differentiation in section 1153 results in disadvantages to the defendant, and it is difficult to see any benefit to Indians generally. The legislative history of the challenged portion of the statute, quoted above, suggests that the offense of assault with a dangerous weapon was consigned to state law to make it easier to convict Indians, an objective hardly consonant with a guardian-ward relationship.

Moreover, the government has offered no justification for the provision other than a general reference to Congress' plenary power over Indians. Hopefully, that power does not allow Congress to make arbitrary distinctions, particularly in the area of criminal law. "In this context, where the power of the State weighs most heavily upon the individual or the group, we must be especially sensitive to the policies of the Equal Protection Clause * * *." McLaughlin v. Florida, 379 U.S. 184, 192, 85 S.Ct. 283, 288, 13 L.Ed.2d 222 (1964).

■ The portion of section 1153 which relegates the definition and punishment of assault with a dangerous weapon to state law places defendant at

a serious disadvantage solely because he is an Indian. This racial classification is not reasonably related to any proper governmental objective and is therefore arbitrary and invidious in violation of the Due Process Clause of the Fifth Amendment. Bolling v. Sharpe, *supra.* The indictment shall be dismissed.[4]

---

4. The same portion of section 1153 was declared unconstitutional on similar grounds in United States v. Kuwanyaioma, (D. Ariz. No. CR–70–104 Phx.; Order entered July 24, 1970). The United States abandoned the appeal of the order dismissing the indictment. *See also* Comment, Indictment under the "Major Crimes Act"—An Exercise in Unfairness and Unconstitutionality, 10 Ariz.L.Rev. 691 (1968).