UNITED STATES of America,
Plaintiff-Appellee,

v.

Gabriel Francis ANTELOPE,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Leonard Francis DAVISON and
William Andrew Davison,
Defendants-Appellants.

Nos. 74–2741, 74–2742.

United States Court of Appeals,
Ninth Circuit.

Sept. 4, 1975.

Certiorari Granted Feb. 23, 1976.
See 96 S.Ct. 1100.

Allen V. Bowles (argued), Moscow, Idaho, for Antelope.

Mikel H. Williams, Asst. U. S. Atty. (argued), Boise, Idaho, for plaintiff-appellee.

John W. Walker (argued), Moscow, Idaho, for Davisons.

### OPINION

Before KILKENNY, CHOY and GOODWIN, Circuit Judges.

KILKENNY, Circuit Judge:

Appellants, all enrolled members of the Coeur d'Alene Indian tribe, appeal their convictions, after a jury trial, of murder in violation of the Major Crimes Act, 18 U.S.C. § 1153, as defined in 18 U.S.C. § 1111.

### FACTS AND PROCEEDINGS BELOW

Count I of the indictment charges appellants Antelope and Leonard Davison with the felonious entry of the home of a non-Indian woman, situated within the confines of the Coeur d'Alene Indian Reservation [Indian country] in Idaho, with the intent to commit robbery in violation of 18 U.S.C. § 1153. Count II of the indictment charges the same appellants with robbery of a purse containing money from the woman within the confines of the same reservation, all in violation of 18 U.S.C. §§ 1153 and 2111.

Count III of the indictment charges appellants Antelope, Leonard Davison and William Davison, along with non-appellant Seyler, with killing the woman in the perpetration of the robbery alleged in Count II, unlawfully and wilfully and with malice aforethought by beating her, a non-Indian, with their fists and feet, within the exterior boundaries of the aforementioned Indian Reservation, all in violation of 18 U.S.C. §§ 1153 and 1111.

Appellants entered pleas of not guilty. Seyler was granted immunity and testified at trial as a government witness. The jury found Antelope and Leonard Davison guilty on all three counts, including first degree murder on Count III. William Davison was convicted solely of the lesser included offense of second degree murder on Count III.

### ISSUE

■ Appellants' common contention is that the murder provision of 18 U.S.C. § 1153 is unconstitutional as applied to them. They argue that it operated to deprive them of equal protection and due process under the Fifth Amendment through an invidious racially-based discrimination unjustified by a proper governmental objective.

### THE STATUTORY FRAMEWORK

■ Murders committed within "Indian country" fit into and are prosecuted under one of four categories:

(1) The crime of killing an Indian by an Indian is governed by the Major Crimes Act, 18 U.S.C. § 1153.[1] Murder under that section is defined in 18 U.S.C. § 1111,[2] which includes a version of the traditional felony murder definition.

(2) The crime of killing of an Indian by a non-Indian is governed by the Federal Enclave Law, 18 U.S.C. § 1152,[3] which also refers to § 1111 for the definition of murder.

(3) The crime of killing a non-Indian by an Indian is also controlled by § 1153, as defined in § 1111. This is, of course, the situation in the case before us.

(4) In obvious contrast to the above, the killing of a non-Indian by a non-Indian in Indian country is a matter for prosecution by the state in which the offense occurred. *New York ex rel. Ray v. Martin,* 326 U.S. 496, 66 S.Ct. 307, 90 L.Ed. 261 (1946); *United States v. McBratney,* 104 U.S. (14 Otto) 621, 26 L.Ed. 869 (1881); *United States v. Cleveland,* 503 F.2d 1067 (CA9 1974). Accordingly, the definition of murder in such a case is determined by reference to the situs state's law.

In 1966 Congress amended § 1153 to define and punish in accordance with *state* law assault with a dangerous weapon, incest, and assault with intent to commit rape. *See* 1966 U.S.Code Cong. & Admin.News, p. 3653. Burglary was already so treated. The other amendment in 1968 made definable and punishable under state law is the offense of assault resulting in serious bodily injury. However, neither amendment changed the definition of murder, which was and remains subject to federal definition under § 1111.

1. Section 1153 provides in pertinent part:

 "Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder . . ., shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States."

2. Section 1111 provides in pertinent part:

 ". . . Murder is the unlawful killing of a human being with malice aforethought. *Every murder . . . committed in the*

*perpetration of,* or attempt to perpetrate, any arson, rape, burglary, or *robbery . . . is murder in the first degree."* [Emphasis supplied.]

3. Section 1152 provides in pertinent part:

 "Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country."

If, in this case, appellants had been non-Indians they would have been indictable only in the Idaho state courts under the murder definition contained in I.C.A. § 18–4003.[4] This provision, unlike the federal version in § 1111, contains no felony murder provision, but instead would require for conviction proof of premeditation and deliberation.

## THE EQUAL PROTECTION CLAIM

The cornerstone of appellants' challenge is that they are discriminated against by reason of the racially-based disparity of governmental burdens of proof under 18 U.S.C. §§ 1153, 1111, and I.C.A. § 18–4003. Needless to say, it requires less evidence to obtain a first degree murder conviction under the federal definition in § 1111, with the felony murder inclusion, than is needed to obtain a murder conviction under the Idaho statute lacking such a provision. Not requiring proof of the critical *mens rea* element of premeditation and deliberation, the federal prosecution of appellants is far less burdensome than had they been non-Indians subject only to Idaho jurisdiction.

Appellants correctly note that Congress has granted federal courts jurisdiction over the crime of which they are convicted solely on the basis of their race. Their argument, however, is not against the grant of jurisdiction itself, but rather against the accompanying definition of murder. They claim that, at least in their case, the definitional difference under the jurisdictional veil allows the government to accomplish something it would be prohibited from doing through direct statutory means if it were to prosecute both Indians and non-Indians for murders of non-Indians in Indian country.

We here emphasize that the *sole* basis for the disparate treatment of appellants and non-Indians is that of race. Although the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is so unjustifiable as to be violative of due process. *Jimenez v. Weinberger*, 417 U.S. 628, 637, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974); *Johnson v. Robison*, 415 U.S. 361, 364, 94 S.Ct. 1160, 39 L.Ed.2d 339 (1973); *Frontiero v. Richardson*, 411 U.S. 677, 680 n. 5, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Thus, if a classification would be invalid under the Equal Protection Clause of the Fourteenth Amendment, it is also inconsistent with the due process requirement of the Fifth Amendment. *Richardson v. Belcher*, 404 U.S. 78, 81, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971), and *Johnson v. Robison, supra*, 415 U.S. 364 n. 4, 94 S.Ct. 1160. Racial classifications are inherently suspect, are subject to the "most rigid scrutiny," and bear a far heavier burden of justification than other classifications. *Hunter v. Erickson*, 393 U.S. 385, 392, 89 S.Ct. 557, 21 L.Ed.2d 616 (1969); *McLaughlin v. Florida*, 379 U.S. 184, 194, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); *Korematsu v. United States*, 323 U.S. 214, 216, 65 S.Ct. 193, 89 L.Ed. 194 (1944). They can pass constitutional muster only if they are not invidious or capricious and are reasonably related to a proper governmental objective. *Bolling v. Sharpe, supra*, 347 U.S. at 499, 500, 74 S.Ct. 693.

We have had occasion to review the constitutionality of § 1153 under equal protection and due process challenges in a variety of circumstances, but none involving murder or otherwise in point on appellants' claim. In *Gray v. United States*, 394 F.2d 96 (CA9 1967), *cert. de-*

---

4. I.C.A. § 18–4003 provides as follows:

". . . All murder which is perpetrated by means of poison, or lying in wait, torture, or by any other kind of wilful, deliberate and premeditated killing is murder of the first degree. Any murder of any peace officer of this state or of any municipal corporation or political subdivision thereof, when the offi-

cer is acting in line of duty, and is known or should be known by the perpetrator of the murder to be an officer so acting, shall be murder in the first degree. Any murder committed by a person under a sentence for murder of the first or second degree shall be murder in the first degree. All other kinds of murder are of the second degree."

*nied,* 393 U.S. 985, 89 S.Ct. 459, 21 L.Ed.2d 446 (1968), we employed the traditional doctrine of federal wardship or protection of Indians in upholding as constitutional a disparity in sentencing in rape cases. However, the difference in treatment in *Gray* operated to mitigate the penalty for Indians raping non-Indians and thus inured to the Indians' benefit. This contrasts with the present case in which appellants are put at a distinct *disadvantage* by the statute.

Appellee places great reliance upon *Henry v. United States,* 432 F.2d 114 (CA9 1970), *cert. denied,* 400 U.S. 1011, 91 S.Ct. 576, 27 L.Ed.2d 625 (1971), in which we held that although the defendant Indian was erroneously charged under § 1152 for his rape of two non-Indians on an Indian reservation, rather than correctly under § 1153, he was not prejudiced thereby and the error was harmless. More importantly, we rejected in *Henry* an equal protection claim which at least superficially resembles appellants', namely:

"[i]f, as hypothesized by appellant, one of the four defendants had happened to be a non-Indian—both the victim and the offender would be non-Indians, and the crime of rape would not have been determined by reference to §§ 1152 and 2031 [federal definition of rape] . . ., but by the law of Nevada . . ."

*Id.* at 118. We dismissed this claim specifically because the law operated to apply identical definitions of rape under either federal or Nevada law, thus creating no real disparity of treatment between Indians and non-Indians charged with rape of non-Indian victims. *Henry* followed the holding of *Mull v. United States,* 402 F.2d 571 (CA9 1968), *cert.*

*denied,* 393 U.S. 1107, 89 S.Ct. 917, 21 L.Ed.2d 804 (1969). We there held that when a statute does not subject the Indian defendant to any truly invidious racial discrimination (*i. e.,* when he is not put in a genuinely disadvantageous position), it cannot be challenged on equal protection grounds.[5] Of course, appellants' situation is precisely the opposite and serves as a critical point of distinction for our purposes. *Mull, Gray* and *Henry* all sustained § 1153 under constitutional challenge, but none of them involved the kind of invidious discrimination which puts an Indian defendant at a serious procedural or substantive disadvantage. Appellants' case is clearly one of first impression.

We believe that the rationale expressed in our recent decision in *United States v. Cleveland,* 503 F.2d 1067 (CA9 1974), is here applicable. That case involved two categories of *assaults* in Indian country; Indians against Indians and Indians against non-Indians. Regarding the latter, we said a claim of unconstitutional discrimination due to an alleged discrepancy in burdens of proof for assault must fail because state law (Arizona) would apply equally whether the defendant be Indian or non-Indian.[6] Citing *Henry v. United States,* supra, we noted that "[i]n a case involving offenses committed by Indians against non-Indians, similar constitutional arguments were rejected by this Circuit for similar reasons," *i. e.,* the creation of equal treatment by the 1966 and 1968 amendments to § 1153. 503 F.2d at 1071 n. 4.

However, we there took a different position when faced with an assault by an Indian against an Indian in the Arizona legal context. The employment in

---

5. *Mull* involved an assault by an Indian agent against an Indian. After stating the above rule, we added:

"We deal here only with this appellant and the offense of which and the statutes under which he was convicted. We express no opinion as to other offenses, or as to the effect of later amendments to the statutes as they relate to an offense committed after their enactment." 402 F.2d at 573.

6. The final paragraph of 18 U.S.C. § 1153 reads:

"As used in this section, the offenses of burglary, assault with a dangerous weapon, assault resulting in serious bodily injury, and incest shall be defined and punished in accordance with the laws of the State in which such offense was committed."

Arizona of § 1153 for Indian assault defendants and § 1152 for non-Indian assault defendants was such that "[t]he statutory scheme . . . [made] Indians subject to more severe punishment than . . . non-Indians . . . and *reduce[d] the prosecutor's burden of proof.*"[7] *Id.* at 1071 n. 5. We concluded there was not a sufficient federal or state interest justifying the distinction, one based solely on race. Accordingly, we held that, in the Arizona context, the assault provision violated the Indian defendants' Fifth Amendment due process and equal protection rights.

We there followed, without citation, the logic of *United States v. Boone*, 347 F.Supp. 1031 (D.N.M.1972), heavily relied upon by appellants. *Boone* held unconstitutional that portion of § 1153 referring to state law the definition and punishment of assault with a dangerous weapon by an Indian. Employing reasoning identical to ours in *Cleveland*, the *Boone* court held that the provision placed the Indian at an unjustified, discriminatory disadvantage since under New Mexico law the prosecution need not prove intent to do bodily harm, which is a requirement under § 1152 when the defendant is a non-Indian.

Both *Cleveland* and *Boone* involved offenses against Indians, so federal jurisdiction existed regardless of the race of the defendant. Here, of course, the question is complicated by the absence of federal jurisdiction against our comparative group, non-Indians killing non-Indians.[8] Appellee argues that appellants are, in reality, complaining of discriminatory jurisdiction, a matter beyond review. We disagree. In *United States v. Cleveland, supra,* at 1071, we said:

"The effect of the 1966 and 1968 amendments to section 1153, subjecting Indians who assault non-Indians to state law was to create *equal treat-*

*ment* of non-Indians and Indian defendants for this category of offenses, [footnote omitted] *excepting only that the Indians are prosecuted in federal courts and non-Indian defendants are prosecuted in the state courts.*" [Emphasis supplied.]

Murder, at least in the Idaho context, does not incur the equal treatment the Congressional amendments gave to assault, though the separate jurisdictional element is obviously still present.

 In effect, the murder provision of § 1153 brings about the same unconstitutional disparity of burdens of proof condemned in *Cleveland*, except that it does so under the veil of jurisdiction. The jurisdictional difference does not provide any justification for the discriminatory treatment. The government should not be permitted to accomplish through discriminatory jurisdiction what it cannot do through discriminatory statutory coverage when both Indian and non-Indian defendants are jurisdictionally covered. To hold otherwise would allow the government to run roughshod over the Fifth Amendment in the name of jurisdictional sacrosanctity, employing jurisdiction as an inviolate tool. Congress developed the jurisdictional scheme for crimes committed in Indian country, and in so doing it is clearly subject to the strictures of the Fifth Amendment.

 Appellee argues that the established federal wardship of Indians justifies the government's treatment of appellants, thus providing the requisite "proper governmental objective." *Bolling v. Sharpe, supra,* 347 U.S. at 500, 74 S.Ct. 693. True enough, Congress has established for Indians a special protected status under the guardianship of the federal government. *Board of Commissioners of Creek County, Okla. v. Seber,* 318 U.S. 705, 63 S.Ct. 920, 87 L.Ed. 1094

7. Comparing 18 U.S.C. § 113(c), (d) (non-Indian defendants) with A.R.S. §§ 13–249, 13–245(A)(5), (C) (Indian defendants) on the severity of punishment, and 18 U.S.C. § 113(c) with A.R.S. § 13–249(A) on the prosecutorial burden of proof.

8. We noted in *Cleveland, supra,* at 1071.

"The Indians do not contend that the difference in jurisdiction denies them either due process or equal protection."

(1943); *United States v. Kagama*, 118 U.S. 375, 6 S.Ct. 1109, 30 L.Ed. 228 (1886); *Gray v. United States, supra*, at 98. Moreover, the grant of national and state citizenship to Indians did not lessen the protection of this guardianship. *In re Carmen's Petition*, 165 F.Supp. 942 (N.D.Cal.1958), *aff'd sub nom., Dickson v. Carmen*, 270 F.2d 809 (CA9 1959), *cert. denied*, 361 U.S. 934, 80 S.Ct. 375, 4 L.Ed.2d 355 (1960). Beyond doubt, as was held in *United States v. Thomas*, 151 U.S. 577, 585, 14 S.Ct. 426, 429, 38 L.Ed. 276 (1894), the federal government has ". . . full authority to pass such laws . . . as may be necessary to give to these people full protection in their persons and property, and to punish all offenses committed against them or by them within such reservations."

Nevertheless, the wardship doctrine remains subject to constitutional limitations in recognition of Indians' inherent rights as citizens. *United States v. Klamath & Moadoc Tribes of Indians*, 304 U.S. 119, 123, 58 S.Ct. 799, 82 L.Ed. 1219 (1938). The Supreme Court recently spoke of this problem in *Keeble v. United States*, 412 U.S. 205, 211–212, 93 S.Ct. 1993, 1997, 36 L.Ed.2d 844 (1973), referring to the original purpose of the Major Crimes Act *vis-a-vis* Indian defendants' modern-day constitutional rights:

"In short, Congress extended federal jurisdiction to crimes committed by Indians on Indian land out of a conviction that many Indians would 'be civilized a great deal sooner by being put under [federal criminal] laws and taught to regard life and the personal property of others.' 16 Cong.Rec. 936 (1885) (remarks of Rep. Cutcheon). *That is emphatically not to say, however, that Congress intended to deprive Indian defendants of procedural rights guaranteed to other defendants, or to make it easier to convict an Indi-*

*an than any other defendant."* [Emphasis supplied.] [9]

Thus, it is clear that when Indians are put at a serious racially-based disadvantage, especially—as here—in matters of the criminal rights of defendants, such discriminatory treatment cannot be justified by the wardship concept. The Indians' protected status cannot be employed to make their prosecution for murder easier than that of non-Indians under identical circumstances. Indians' rights to due process and equal protection under the Fifth Amendment require that they not be treated worse than similarly situated non-Indians.

The argument is also made that the need for uniform federal law within the confines of Indian reservations— some of which traverse state lines—provides the requisite "proper governmental objective" to sustain the statute's constitutionality. We reject this argument. First of all, Congress has already seen fit to make the definition and punishment of certain other crimes under § 1153 wholly dependent upon state law, thus showing a legislative intent to risk possible inconsistency within multi-state reservations in order to secure equal treatment in the prosecution of Indians and non-Indians. Murder was intentionally omitted from this egalitarian scheme. More important, we view a possible legal fortuity based on location to be much less onerous than one based on the inherently suspect classification of race. Consistency in federal criminal law is ordinarily a highly laudable legislative objective, but not when it operates to deprive citizens of their right to equal treatment. Just as in this wardship argument, *supra*, it is elementary that in the case of such a conflict the Fifth Amendment takes priority.

It is our considered judgment that § 1153's murder provision is unconstitutional as applied in this case. This is due

---

9. The issue in *Keeble* was whether an Indian prosecuted under § 1153 is entitled to a jury instruction on lesser included offenses. The Court held that an Indian has such a constitu-tionally guaranteed right if the facts of his case so warrant, even though the lesser included offense is not expressly enumerated in the statute.

to the nature of Idaho's murder statute which does not contain a felony murder provision. The constitutionality of § 1153, as applied to murders in other states is not before us. Nor do we reach the contention that the felony murder provision of § 1111 is unconstitutional on its face. If the federal-state disparity elsewhere does not result in discriminatory treatment to the Indian defendant (*i. e.*, if they are treated no worse than similarly situated non-Indians), a *Henry*-type situation would exist and they cannot complain.

## CONCLUSION

Because appellants were indicted and convicted under a statute unconstitutional in its application to them, their convictions of murder under Count III are reversed. In so disposing of this appeal, we need not consider appellant William Davison's other assignments of error. Since appellants Antelope and Leonard Davison do not challenge their convictions of burglary and robbery under Counts I and II of the indictment, those convictions are affirmed.

Affirmed in part and reversed in part.