UNITED STATES of America,
Plaintiff-Appellee,

v.

Victor FRANCISCO, Defendant-Appellant.

No. 75–3668.

United States Court of Appeals,
Ninth Circuit.

June 16, 1976.

Frank R. Zapata, Asst. Federal Public Defender (argued), Tucson, Ariz., for defendant-appellant.

Chris Pickrell, Asst. U. S. Atty. (argued), Tucson, Ariz., for plaintiff-appellee.

OPINION

Before SNEED and KENNEDY, Circuit Judges, and CONTI,* District Judge.

SNEED, Circuit Judge:

This case comes to us on appeal from the district court's denial of appellant's motion to dismiss the indictment and his motions for judgment of acquittal. Appellant contends that the indictment which had charged him with armed burglary in the nighttime, in violation of Title 18, United States Code, Section 1153, and Arizona Revised Statute, Section 13–302 had failed to allege a federal offense. Appellant also claims that the evidence failed to establish the requisite elements of armed burglary in the nighttime. We reject both of these claims and agree with the orders of the district court which denied his motions.

I. *Facts.*

The indictment of the Grand Jury charged the appellant Francisco, an Indian, with entering a dwelling house within Indian Country[1] in April 1975 with the intent

* Honorable Samuel Conti, United States District Judge, for the Northern District of California, sitting by designation.

1. The facts did not allege that the victim was an Indian. Nevertheless the indictment did accurately and adequately allege that the crimes were committed on an Indian Reservation and that the crimes were committed by an Indian.

to commit petty larceny, and that while committing said burglary, the appellant was armed with a deadly weapon—a butcher knife—in violation of 18 U.S.C. § 1153 [2] and Ariz.Rev.Stat. § 13–302.[3]

On October 17, 1975, the appellant filed a motion to dismiss the indictment, contending that the indictment failed to allege a federal offense. Francisco claims that armed burglary in the nighttime is an offense not within burglary as defined in 18 U.S.C. § 1153. According to Francisco, when section 1153 prescribes that the definition and penalty for burglary shall be provided by state law, it was incorporating the state law only to the extent that it existed in 1949, the date of the reenactment of section 1153. In 1949, section 43–901 of the Arizona Code, defined burglary as including only first degree (nighttime) and second degree burglary (daytime).[4] According to the appellant's

This satisfies the jurisdictional prerequisites of the statute, 18 U.S.C. § 1153.

2. 18 U.S.C. § 1153, at the time of the alleged offense, provided:

Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, rape, carnal knowledge of any female, not his wife, who has not attained the age of sixteen years, assault with intent to commit rape, incest, assault with intent to kill, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, burglary, robbery, and larceny within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

As used in this section, the offenses of rape and assault with intent to commit rape shall be defined in accordance with the laws of the State in which the offense was committed, and any Indian who commits the offenses of rape or assault with intent to commit rape upon any female Indian within the Indian country shall be imprisoned at the discretion of the court.

As used in this section, the *offenses of burglary*, assault with a dangerous weapon, assault resulting in serious bodily injury, and incest *shall be defined and punished in accordance with the laws of the State in which such offense was committed.* (Emphasis added).

As amended Nov. 2, 1966, Pub.L. 89–707, § 1, 80 Stat. 1100; Apr. 11, 1968, Pub.L. 90–284, Title V, § 501, 82 Stat. 80.

3. Ariz.Rev.Stat. § 13–302, at the time of the alleged offense provided:

Definition and degrees of burglary; punishment

A. A person entering a building, dwelling house, office, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, garage, tent, vessel, railroad car, or motor vehicle, trailer or semi-trailer, a fenced or otherwise enclosed commercial yard used for storing equipment or supplies, including but not limited to scrap metals, steel or construction materials, with intent to commit grand or petty theft, or any felony, and a person entering an outhouse or other building not enumerated in this section with intent to commit a felony, is guilty of burglary.

B. Burglary committed in the nighttime is burglary of the first degree, punishable by imprisonment in the state prison for not less than one nor more than fifteen years. Burglary committed in the daytime is burglary of the second degree, punishable by imprisonment in the state prison for not to exceed five years.

C. Burglary committed by a person armed with a gun or deadly weapon is punishable by imprisonment in the state prison, for the first offense, for not less than five years, for a second offense, not less than ten years, for a third or subsequent offense, not less than twenty years nor more than life imprisonment, and in no case, except for first offense, shall the person convicted be eligible for suspension or commutation of sentence, probation, pardon or parole until such person has served the minimum sentence imposed.

D. Any person convicted of burglary while armed with a gun or deadly weapon who is placed on probation in accordance with the terms of this section shall upon sentencing, be committed to the department of corrections for a period of not less than thirty days. As amended Laws 1967, Ch. 62, § 4; Laws 1969, Ch. 38, § 1, eff. March 27, 1969; Laws 1974, Ch. 144, § 1.

4. Arizona Code § 43–901 (1939), *as amended*, Ariz.Rev.Stat. § 13–302 (1974), provided:

43–901. Burglary defined—Degrees—Punishment.—Every person who enters any building, dwelling-house, office, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, garage, tent, vessel, or railroad car with intent to commit grand or petit larceny or any felony; and every person who enters any outhouse or other building not above enumerated, with intent to commit any felony, is guilty of burglary. Burglary committed in the night-time is burglary of the first degree and burglary committed in the day-time is burglary of the second degree.

Burglary of the first degree is punishable by imprisonment in the state prison for not

construction, only those definitions of burglary can be construed as being within the burglary provision of 18 U.S.C. § 1153. And, since the relevant Arizona statute was amended in 1967 to include armed burglary in the nighttime, appellant claims it is not an assimilated crime under 18 U.S.C. § 1153. Therefore, appellant concludes the indictment failed to allege a federal offense when it charged him with committing armed burglary in the nighttime. The trial court did not agree and denied the motion to dismiss the indictment.

During his jury trial, appellant moved for a judgment of acquittal at the end of the Government's case in chief, contending that the Government had produced no evidence to establish the requisite elements of armed burglary in the nighttime. This motion also was denied. At the completion of all the evidence, Francisco renewed his motion for judgment of acquittal, but the motion was again denied. Finally, on October 23, 1975, a trial by jury convicted Francisco of armed burglary in the nighttime as charged in the indictment.

We hold that the appellant's motions were properly denied by the district court, and we therefore affirm the conviction.

## II. *The Issue: Static or Prospective Incorporation.*

At the time of the alleged offense, the Major Crimes Act, 18 U.S.C. § 1153, enumerated thirteen crimes which specifically constituted federal crimes when committed by one Indian against the person or property of another Indian or other person. The definition and penalties for the specified crimes of murder, manslaughter, carnal knowledge of a female under the age of sixteen years, assault with intent to kill, arson, robbery and larceny are found in various sections of Title 18. *See* 18 U.S.C. §§ 1111, 1112, 2032, 113, 81, 2111, and 661 respectively. Congress expressly provided that there be reference to state law for the definition of rape, assault with intent to commit rape, incest, assault with a dangerous weapon, assault resulting in serious bodily injury, and burglary. Congress also expressly provided that there be reference to state law for the punishment of incest, assault with a dangerous weapon, assault resulting in serious bodily injury, and burglary. For the crimes of rape and assault with intent to commit rape committed by an Indian, section 1153 provides that the defendant shall be imprisoned at the discretion of the court when the victim is a female Indian. But when the victim is a female non-Indian, sections 2031 and 113 are the relevant penalty provisions for said crimes.[5]

The heart of the appellant's claim is his assertion that Congress intended that section 1153 incorporate state law as it existed at the date of its enactment. The Government, on the other hand, contends

---

less than one [1] nor more than fifteen [15] years. Burglary of the second degree is punishable by imprisonment in the state prison for not more than five [5] years. [P.C. 1901, §§ 418, 420, 421; 1913, §§ 459–461; cons. & rev., R.C. 1928, § 4746.]

5. The constitutionality of section 1153 is not now before this court. But we note in passing that this court has had occasion to review attacks on the statute's constitutionality. The attacks claimed that in various circumstances section 1153 violated the equal protection and due process clauses of the Constitution of the United States.

We have sustained the constitutionality of the section either because the distinction challenged was beneficial to Indians generally, *Gray v. United States*, 394 F.2d 96 (9th Cir. 1967), *cert. denied*, 393 U.S. 985, 89 S.Ct. 459, 21 L.Ed.2d 446 (1968) or because the defendant in the case suffered no genuine disadvantage as a result of the distinction involved. *United States v. Burland*, 441 F.2d 1199 (9th Cir.), *cert. denied*, 404 U.S. 842, 92 S.Ct. 137, 30 L.Ed.2d 77 (1971); *Henry v. United States*, 432 F.2d 114 (9th Cir. 1970), *modified on other grounds*, 9 Cir., 434 F.2d 1283, *cert. denied*, 400 U.S. 1011, 91 S.Ct. 576, 27 L.Ed.2d 625 (1971); *Mull v. United States*, 402 F.2d 571 (9th Cir. 1968), *cert. denied*, 393 U.S. 1107, 89 S.Ct. 917, 21 L.Ed.2d 804 (1969).

But we have also upheld claims that the statute was unconstitutional as applied to defendants in the case. *United States v. Antelope*, 523 F.2d 400 (9th Cir. 1975), *cert. granted*, 424 U.S. 907, 96 S.Ct. 1100, 47 L.Ed.2d 311, 44 U.S.L.W. 3471 (1976); *United States v. Analla*, 490 F.2d 1204, 1208 (10th Cir.), *vacated and remanded on other grounds*, 419 U.S. 813, 95 S.Ct. 28, 42 L.Ed.2d 40 (1974).

section 1153 incorporation is of state law as it exists at the time of the offense. If the appellant is right, his motion to dismiss the indictment should have been granted because armed burglary in the nighttime did not exist under Arizona law in 1949, the most recent date of reenactment of section 1153. If the Government is right, the motion to dismiss was properly denied because, at the time of the offense, section 13–302 of the Ariz.Rev.Stat. provided a definition and penalty for armed burglary in the nighttime.

We believe the Government is right. Our view initially is based on practical considerations. A statute which incorporates subsequent amendments to federal law, as it does when the federal definitions and penalties are changed, but not changes of incorporated state law, is an awkward statute with which to work and fulfills badly, if at all, the notice function which lies at the heart of the constitutional doctrine of vagueness. This awkwardness is heightened when it is pointed out that "static incorporation" encounters problems with respect to the crime of incest which incorporated state law only as a result of a 1966 amendment. Under the appellant's theory state law applicable to the crime with which he is charged is that law which existed in 1949. A federal statute incorporating state law of *different dates all antecedent to the commission* of the offense is not, to say the least, a tidy statute. Such a construction should not easily be presumed to have been the intent of Congress.

The appellant's construction also is inconsistent with the Congressional intention to secure equal treatment of Indians and non-Indians. *See United States v. Antelope*, 523 F.2d 400 (9th Cir. 1975), *cert. granted,* 424 U.S. 907, 96 S.Ct. 1100, 47 L.Ed.2d 311, 44 U.S.L.W. 3471 (1976). Appellant and non-Indians ordinarily should be subject to the same law when both commit the same offense in the same state. A strong showing is necessary to require us to abandon this principle of equality.

The appellant, with some reason, believes that he has made such a showing. He relies on *United States v. Gomez*, 250 F.Supp. 535 (D.N.M.1966) which unambiguously supports his position. We believe that *Gomez* was incorrectly decided. To demonstrate its error it is necessary to point out that its holding rests on a premise which has been rejected by this court in *Acunia v. United States*, 404 F.2d 140 (9th Cir. 1968). The premise is that, but for the words "shall be defined and punished in accordance with the laws of the State in which such offense was committed," appearing in the last paragraph of section 1153, the Assimilative Crimes Act, as amended in 1948, 18 U.S.C. § 13, would have incorporated state law as of the place and time of the commission of the offense. Building on this premise *Gomez* concluded that the insertion of the quoted words was intended to preclude operation of the Assimilative Crimes Act and in doing so indicated an intent to secure "static incorporation." We held in *Acunia* that "the Assimilative Crimes Act was not applicable [to the offense of incest as enumerated in section 1153 when committed by an Indian against an Indian] because removed along with other general laws by the second paragraph of section 1152 . . ." 404 F.2d at 143.[6] Our holding demonstrates that within this circuit it cannot be stated that the Assimilative Crimes Act would have been applicable generally to section

---

**6.** 18 U.S.C. § 1152 subjects non-Indians to the federal criminal law for offenses committed in Indian territory. The section also covers Indians who commit offenses in Indian country but expressly excepts intra-Indian offenses. Section 1152 reads as follows:

> Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.
>
> *This section shall not extend to offenses committed by one Indian against the person or property of another Indian*, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

1153 crimes not otherwise defined by federal statutes. In this manner the foundation on which *Gomez* rests collapses.

It follows that the words quoted above appearing in the last paragraph of section 1153 were not inserted to oust the Assimilative Crimes Act. Their purpose was to incorporate state law. Unfortunately, however, the incorporation leaves unresolved the precise issue before us. Our resolution of this issue is justified for the reasons already mentioned as well as by its congruity with the policy of the Assimilative Crimes Act which incorporates the state law existing at the time of the commission of the offense. This prospective incorporation was held constitutionally proper in *United States v. Sharpnack*, 355 U.S. 286, 78 S.Ct. 291, 2 L.Ed.2d 282 (1958). Moreover, the Court stated that prospective incorporation amounted to recognition by Congress of its "underlying policy of 123 years' standing . . ." and amounted to "a practical accommodation of the mechanics of the legislative functions of State and Nation in the field of police power where it is especially appropriate to make the federal regulation of local conduct conform to that already established by the State." *Id.*, at 292–93 and 294, 78 S.Ct. at 295. Our use of this policy as an aid to interpretation of the critical words of section 1153 is not made illegitimate by our rejection in *Acunia* of the application of the Assimilative Crimes Act to certain offenses enumerated in section 1153. The latter was required by section 1152 which erects no bar to a reasonable interpretation of the critical language of section 1153.

To depart from this reasonable interpretation and to adopt the static interpretation of *Gomez* requires a return to the approach of *United States v. Paul*, 31 U.S. (6 Pet.) 141, 8 L.Ed. 348 (1832) which adopted static interpretation in interpreting the language of the original Assimilative Crimes Act, enacted in 1825.[7] A series of subsequent reenactments indicated a Congressional intent to achieve by reenactment the substance of prospective incorporation which Congress explicitly adopted in the present Assimilative Crimes Act.[8] This history subsequent to the decision in *Paul*, as well as a fundamental change in the relationship between the Nation and the States which renders the Marshall Court's concern with guarding the prerogatives of the Nation from erosion by the States less pressing, justifies our rejection of *Paul's* static incorporation.[9]

Finally, our interpretation of section 1153 is consistent with the Supreme Court's construction of similar statutes. For example, the Webb-Kenyon Act of March 1, 1913, 37 Stat. 699, 27 U.S.C. § 122, proscribed the shipment of intoxicating liquors into a State to be used "in violation of any law of such State . . .." Subsequently, West Virginia enacted a prohibition law. The Court upheld the applicability of the Federal Act as it assimilated that subsequent state statute. *Clark Distilling Co. v. Western Maryland R. Co.*, 242 U.S. 311, 326, 37 S.Ct. 180, 61 L.Ed. 326 (1917). In a more recent case, *United States v. Howard*, 352

---

7. Assimilative Crimes Act of March 3, 1825 in pertinent part provided:
   Sec. 3 . . . if any offence shall be committed . . . [within a federal enclave], the punishment of which offense is not specially provided for by any law of the United States, such offense shall, upon a conviction in any court of the United States having cognisance thereof, be liable to, and receive the same punishment as the laws of the state in which such [enclave], is situated, provide for the like offense when committed within the body of any county of such state. 4 Stat. 115.

8. In 1866, 14 Stat. 13; in 1874 as R.S. § 5391; in 1898, 30 Stat. 717; in 1909 as § 289 of the Criminal Code, 35 Stat. 1145; in 1933, 48 Stat. 152; in 1935, 49 Stat. 394; in 1940, 54 Stat. 234; and finally in 1948 in the Revised Criminal Code as 18 U.S.C. § 13.

9. In *Hollister v. United States*, 145 F. 773 (8th Cir. 1906), the circuit court applied *Paul's* rule of construction when it upheld the constitutionality of the Act of February 2, 1903, c. 351, 32 Stat. 793. But the statutory language of the Act differed from that of section 1153, for it employed the *present* tense when it referred to the laws of the State. In pertinent part the Act provided that persons committing certain offenses "[s]hall be subject to the same penalties and punishments as are all other persons convicted of . . . said crimes under the laws of the State . . .." (Emphasis added).

U.S. 212, 77 S.Ct. 303, 1 L.Ed.2d 261 (1957), the Court was presented with the construction of the Federal Black Bass Act of May 20, 1926, *as amended*, 16 U.S.C. § 852 (1952). The Act in pertinent part prohibited the delivery of any black bass or other fish, from any State if "such transportation is contrary to the law of the State . . . from which such . . . fish . . . is to be transported . . . ." The Court held that the statute assimilates subsequent rules and regulations of the Florida Game and Fresh Water Fish Commission. Thus not only did the Court construe language similar to that at bar as assimilating subsequent state statutes, but also subsequent rules and regulations of the Commission.

III. *Were the Motions For Judgment of Acquittal Properly Denied.*

■ Appellant also attacks the sufficiency of the evidence. We therefore apply the general rule that the jury's verdict "must be sustained if there is substantial evidence, taking the view most favorable to the Government to support it." *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), *as quoted in Hamling v. United States*, 418 U.S. 87, 124, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). After applying this rule, we hold that based on the evidence before it, the jury was entitled to conclude that the Government had established the requisite elements of armed burglary in the nighttime. The motions for judgment of acquittal were properly denied. The motion to dismiss the indictment and the motions for judgment of acquittal were properly denied.

AFFIRMED.