UNITED STATES of America

v.

Gary E. JONES, Appellant.

UNITED STATES of America

v.

Robert BRYANT, Appellant.

Nos. 74–1466, 74–1468.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 17, 1974.

Decided Dec. 23, 1975.

818

Marsha E. Swiss, Washington, D. C. (appointed by this court), for appellants.

Jeffrey T. Demerath, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Charles E. Wagner and Nicholas Gilman, Asst. U. S. Attys., were on the brief for appellee. David T. Stitt, Asst. U. S. Atty., at the time the record was filed, also entered an appearance for appellee.

Before MOORE,* Senior Circuit Judge for the Second Circuit, and WRIGHT and MacKINNON, Circuit Judges.

Opinion for the court filed by Circuit Judge MacKINNON.

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

Dissenting opinion filed by Circuit Judge J. SKELLY WRIGHT.

MacKINNON, Circuit Judge:

Appellants Jones and Bryant were indicted for possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a) (Count 1), possession of heroin in violation of D.C.Code § 33–402 (Count 2), destruction of evidence in violation of D.C.Code § 23–591(d) (Count 3), and maintaining a common nuisance in violation of D.C.Code § 33–416 (Count 4). All counts of the indictment were tried in a single proceeding in the United States District Court for the District of Columbia, as authorized by D.C.Code § 11–502(3). The fourth count was dismissed by the Government at the close of its evidence (Tr. 306). The remaining counts were submitted to the jury which returned verdicts of not guilty on Count 1 and guilty on Counts 2 and 3 with respect to each appellant. Each was sentenced to concurrent terms of imprisonment of 20 months to five years for possession of heroin and one to three years for destruction of evidence (Tr. 468, 473). We affirm.

## I.

On August 3, 1973, two Metropolitan Police officers were conducting a covert surveillance on a locked and boarded-up building located in Northeast Washington. They observed several persons approach the front door, ring a buzzer, place a quantity of money through a hole in the door, wait a few seconds, put a hand through the door again, and receive something which was placed in a pocket (Tr. 68–69, 126–27). The officers then went back to their station and returned with several other officers to execute a search warrant. Groups of officers approached the front and rear of the building, announced their purpose, and upon receiving no response, forced their way inside. Appellant Bryant was arrested in a hallway, and appellant Jones was found in a locked room containing a toilet and several buckets of acid.

While the raid was taking place, two other officers entered the basement of the building, located the drain pipe leading to the toilet and removed a section of the pipe. Shortly thereafter, a stream of water and acid, 108 tissue paper rolls sealed in cellophane and containing powder, and approximately $131 in torn currency emerged from the pipe (Tr. 73, 83). Tests on the powder in the rolls disclosed that they contained heroin (Tr. 177) with an estimated street value of $10 each (Tr. 291).

## II.

For the first time, appellants argue on this appeal that their prosecution and sentence in the United States District Court under D.C.Code § 33–402 denied them equal protection and is forbidden by D.C.Code § 33–424. The Government urges us not to consider appellants' claim since they failed to make a record by raising the point in the District Court.[1] However, the issue raised presents solely a question of law which would not be materially illuminated by the development of a further record in the trial court.[2] We therefore turn to the merits of appellants' argument.

The indictment joined charges against appellants for violations of both the federal narcotics statutes and the District of Columbia Code. Possession of heroin with intent to distribute is prohibited by 21 U.S.C. § 841(a)[3] and is punishable by

---

1. *See Berenter v. Staggers,* 124 U.S.App.D.C. 141, 142 n.2, 362 F.2d 971, 972 n.2 (1966); *T.V.T. Corp. v. Basiliko,* 103 U.S.App.D.C. 181, 257 F.2d 185 (1958).

2. *Cf.* Fed.R.Crim.P. 52(b):

 Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

3. (a) Unlawful acts.

 Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

 (1) to manufacture, distribute, or dispense, or *possess with intent to* manufacture, *dis-*

imprisonment for not more than 15 years, a fine of up to $25,000 and a mandatory special parole term of three years. These penalties are doubled in the event of a prior felony conviction under any law of the United States relating to narcotics. 21 U.S.C. § 841(b). Simple possession is made unlawful under federal law by 21 U.S.C. § 844 [4] and is punishable by imprisonment of not more than one year and a fine of up to $5,000. Once again the maximum penalties are doubled in the case of repeat offenders.

In contrast, the D.C.Code establishes only a single generalized crime of possession of narcotics. D.C.Code § 33–402(a) provides:

> (a) It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug, except as authorized in this chapter.

Section 33–423 makes this offense punishable by imprisonment for not more than one year. In the case of anyone who has previously been convicted of a violation of the federal or D.C. narcotics laws, the maximum penalty is increased to $5,000 or 10 years. Both appellants had been convicted of prior narcotics offenses under the D.C.Code and thus were subject to the increased maximum penalties.

 Appellants are correct in pointing out that the inclusion in the indictment of charges under the D.C.Code allowed a considerably greater maximum penalty for simple possession following a prior conviction than would have been available had they been charged and convicted (following a prior conviction) of simple possession under the federal statute. However, we have held that Congress, in the exercise of its powers over the District of Columbia, can enact laws which are substantially identical to national legislation but which provide different penalties. See *United States v. McDonald*, 156 U.S.App.D.C. 338, 343, 348, 481 F.2d 513, 518, 523 (1973). The United States Attorney has discretion to determine which of the applicable statutes will form the basis for the prosecution. *United States v. Greene*, 160 U.S. App.D.C. 21, 27, 489 F.2d 1145, 1151 (1973), *cert. denied*, 419 U.S. 977, 95 S.Ct. 239, 42 L.Ed.2d 190 (1975); *Hutcherson v. United States*, 120 U.S.App.D.C. 274, 277, 345 F.2d 964, 967, *cert. denied*, 382 U.S. 894, 86 S.Ct. 188, 15 L.Ed.2d 151 (1965).

 The joinder of charges under federal and D.C. statutes in a single indictment to be tried in the U.S. District Court is specifically authorized by D.C. Code § 11–502(3).[5] We have held on several occasions that in the absence of a specific federal statute superseding prosecution on the local offenses, a defend-

---

*tribute* or dispense, a controlled substance; or

(2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

21 U.S.C. § 841(a) (1970) (emphasis added).

4. (a) It shall be unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his professional practice, or except as otherwise authorized by this subchapter or subchapter II of this chapter. Any person who violates this subsection shall be sentenced to a term of imprisonment of not more than one year, a fine of not more than $5,000, or both, except that if he commits such offense after a prior conviction or convictions under this subsection

have become final, he shall be sentenced to a term of imprisonment of not more than 2 years, a fine of *not more than $10,000*, or both.

21 U.S.C. § 844(a) (1970).

5. D.C.Code § 11–502(3) provides:

In addition to its jurisdiction as a United States district court and any other jurisdiction conferred on it by law, the United States District Court for the District of Columbia has jurisdiction of the following:

\* \* \* \* \* \*

(3) Any offense under any law applicable exclusively to the District of Columbia which offense is joined in the same information or indictment with any Federal offense. (July 29, 1970, Pub.L. 91–358, § 111, title I, 84 Stat. 477.)

ant whose acts constitute violations of both statutory schemes can, under the statute, properly be the subject of a single trial in the District Court under a joint indictment. *United States v. Shepard,* 169 U.S.App.D.C. 353, 515 F.2d 1324 (1975); *United States v. Caldwell* (No. 72–1513, Dec. 31, 1974) (Slip op. at 65 n. 176); *United States v. Knight,* 166 U.S.App.D.C. 21, 509 F.2d 354 (1974). The only constraint on such a prosecution is that where the federal and local offenses are identical or where one would be a lesser included offense of the other, the defendant may ultimately be sentenced under only one statutory scheme. *See Shepard, supra; Knight, supra* ("What is impermissible is not the joinder of offense for trial . . . but the joinder of judgments even with concurrent sentences." 509 F.2d at 363); *United States v. Canty,* 152 U.S.App.D.C. 103, 469 F.2d 114 (1972). The offenses charged in Counts 1 (the U.S.Code offense) and 2 (the D.C.Code offense) of the instant indictment fall within this latter restriction; but appellants were convicted and sentenced *only* under Counts 2 and 3, both of which were charged under the D.C.Code, so there was no "impermissible . . . joinder of judgments" in this case.

**6.** The position of the dissent on this point is capsulized in the first sentence of its note 13:

> The harm to the defendants, I repeat, lies in their exposure to the mixture of federal and local penal schemes, and the added *risk* of a lengthy sentence which that exposure creates.

(Emphasis added.) This is a misstatement of the defendants' exposure and of the result in this case. There is nothing in this decision that creates any "*added* risk"; the offenders by their own conduct exposed themselves to both statutes, thereby creating whatever dual "risk" exists. The penalty of *either* statute is all that is sought by any indictment, or that can be finally adjudged, as it is an integral part of such prosecutions in the District of Columbia that the sentence imposed be limited to one statutory scheme. *See* note 12 *infra.*

If the dissent means to imply that joining U.S.Code and D.C.Code offenses in the same indictment, as the statute authorizes, creates a greater risk of conviction on one count or the other merely because more than one count is charged, it raises a point which is inherent in any joinder of offenses for trial. Considera-

**■ ■** Appellants' equal protection arguments can be readily dismissed on the basis of our opinion in *Shepard, see* 169 U.S.App.D.C. at 365 n.25, 515 F.2d at 1335 n.25. Since successive prosecutions on identical or lesser included D.C. and federal offenses emanate from the same sovereignty, they are precluded by double jeopardy considerations. *Waller v. Florida,* 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970); *United States v. Knight,* 166 U.S.App.D.C. 21, 27, 509 F.2d 354, 360 (1974). Appellants were thus subject to only a single trial on Counts 1 and 2 and were required to conduct only one defense; such proceedings did not violate due process or equal protection.

The equal protection argument advanced by the dissent overlooks this capacity of federal courts in the District of Columbia to join violations of federal law and the D.C.Code in one trial. *See* D.C.Code § 11–502(3) (1973). The dissent's argument is that a defendant in the District of Columbia is denied the equal protection of the law by being subjected to the risk of a heavier penalty than offenders in other federal jurisdictions[6]: that is, while a defendant in the

tions of judicial economy and fairness to the defendant require that all charges growing out of the same incident be prosecuted in one indictment whenever feasible; thus it is only proper that where local law makes it possible, charges under two separate penal schemes also should be joined in a single indictment. The alleged greater "risk" of conviction to which an offender tried in the District of Columbia on both federal and District charges is exposed (as compared to one tried in the Fifth Circuit where such joinder is not customary and possibly never arises in the same context) violates equal protection no more than the heavier punishment which may be imposed on an offender who commits a crime, for example, on the New Mexico portion of the Ute Mountain Indian Reservation rather than the Colorado portion of that same reservation. *See United States v. Antelope,* 523 F.2d 400, 406 (9th Cir. 1975). Although we do not mean to imply that such a disparity could never rise to the level of a constitutional issue, we clearly find a rational basis for the difference here. *See* text at 823–824.

District may be prosecuted on both local and federal charges arising from the same offense and thereby conceivably receive a lengthier sentence than if he were prosecuted on federal charges alone, a double prosecution on state and federal charges is unlikely to occur in other federal jurisdictions. We must disagree with this conclusion.

Initially, we observe that, even assuming that the situation is as the dissent has described it, no violation of equal protection exists. Such a classification based on location is proper: in *United States v. Antelope,* 523 F.2d 400 (9th Cir. 1975), *petition for cert. filed,* 44 U.S.L.W. 3281 (Nov. 3, 1975) (No. 75–661), the Ninth Circuit recently found that it was permissible for Congress to provide by statute that crimes on Indian reservations which encompass several states may be punished under the differing laws of the separate states. Thus, different offenders committing the same crime on different parts of the same federal reservation might be punished unequally, since Congress has the power

> to make the definition and punishment of certain . . . crimes . . . wholly dependent upon state law, [and] thus . . . to risk possible inconsistency within multi-state reservations in order to secure equal treatment in the prosecution of Indians and non-Indians [in each state] . . . [W]e view a possible legal fortuity *based on location* to be much less onerous than one based on the inherently suspect classification of race.

Actually, stripped to its bare essentials, the dissent is contending that a criminal offender in the District of Columbia who has violated both federal and local statutes has a constitutional right to be tried only for one such offense because juries arguably are more apt to return a guilty verdict on one count if the accused is. tried on both counts at the same time. However, it is pure speculation to conclude that a jury would not just as surely convict on one count if the offenses were severed and the charge was proven by the same evidence. There is always the possibility that any jury might flout the law and the evidence, but such a sporting theory of justice based on the speculative probability (risk) that an of-

523 F.2d at 406 (emphasis added). In citing this case for a minor point, *see* dissent at note 6, the dissent fails to recognize that it supports our disposition of the instant case in this respect.

■ Beyond this, however, we disagree strongly with the contention that dual prosecutions are not possible in federal jurisdictions other than the District of Columbia; the authority cited by the dissent for this proposition is less than persuasive. The holdings of the United States Supreme Court in *Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959), and *Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959), teach that successive prosecutions by *different sovereignties* do not violate the double jeopardy clause of the Fifth Amendment and are therefore constitutionally permissible. Despite the unhappiness of some with the result in these cases, they remain the law. The dissent attempts to evade the force of the rule by citing Justice Department policy and the working papers of a congressional commission to show that, whatever the law might permit, a federal prosecution will not in practice *follow* a conviction or acquittal in state court. This present practice and background, however, is not sufficient to establish a violation of equal protection here. The policy of the Justice Department is but an internal policy, without the force of law and subject to change or suspension at any time. Furthermore, as discussed below, the Attorney General's policy is against *successive* prosecutions only, is equally as ap-

fender might entirely escape the consequences of his crimes does not rise to the dignity of a constitutional right so that depriving these appellants of that sporting chance by refusing to limit the trial, through severance or prosecutorial discretion, to one count could be said to have denied them due process or the equal protection of the law. *Brady v. Maryland,* 373 U.S. 83, 90–91, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *United States v. Bowles,* 159 U.S.App. D.C. 407, 414 n.11, 488 F.2d 1307, 1314 n.11 (1973), *cert. denied,* 415 U.S. 991, 94 S.Ct. 1591, 39 L.Ed.2d 888 (1974); *cf. Johnson v. Robison,* 415 U.S. 361, 364 n.4, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974).

plicable in the District as in other jurisdictions, and does not apply to *simultaneous* prosecutions within the District. If it were construed to be otherwise it would exceed the intent of the Attorney General and would contravene the expressed will of Congress. *See* D.C.Code § 11–502(3) (1973). The other authority that the dissent claims supports its argument—the working papers—was merely background discussion for proposed sections of a revised federal criminal code. *The sections involved have since been dropped. Compare* Final Report of the National Commission on Reform of Federal Criminal Laws §§ 707, 708 (1971) *with* S. 1, 93d Cong., 1st Sess. (1973). *See also Hearings on Reform of the Federal Criminal Laws Before the Subcomm. on Criminal Laws and Procedures of the Comm. on the Judiciary,* 93d Cong., 1st Sess., part V, at 4812 (1973). Even had those sections not been deleted, they would not apply to dual prosecutions in the District of Columbia. *See* discussion *infra.*

The dissent also notes that, whatever the decisions of the Supreme Court might allow, a state prosecution *following* a federal conviction or acquittal in a case such as we have here would contravene the dual prosecutions bar of the uniform narcotics legislation· enacted by most states. We are unable to agree, however, that a denial of equal protection could be found solely from the fact that courts in the District of Columbia interpret a uniform statute differently than do courts in other jurisdictions. *Cf. Kidd v. Alabama,* 188 U.S. 730, 732, 23 S.Ct. 401, 402, 47 L.Ed. 669 (1903) ("The state of Alabama is not bound to make its laws harmonize in principle with those of other states.") In the present case, the dissent's argument is further weakened by our construction of that uniform bar to dual prosecutions, D.C. Code § 33–424 (1973), by which we interpret it to prohibit only *successive* prosecutions and not *simultaneous* ones. *See* text at 828–830 *infra.* Because of the unique situation created by the dual jurisdiction of federal courts in the Dis-

trict of Columbia—a situation ·forseen by the Constitutional Convention when it conferred plenary jurisdiction in Congress over the District of Columbia, U.S. Const. art. I, § 8—it is our opinion that a statute enacted pursuant to this power and so construed raises no equal protection issue, since the concerns that underlie the prohibition against successive prosecutions have no application to the *simultaneous* trial of District and federal charges in the District of Columbia. This fundamental difference justifies a unique interpretation of the uniform statute.

The prohibition against successive prosecutions embodied in federal departmental policy and in the statutes of some states appears to find its roots in two main concerns. First, there is the lingering feeling that, despite the *Bartkus* line of cases, "[t]he *spirit* of the rule against double jeopardy . . . is certainly violated." 22 C.J.S. *Criminal Law* § 296d (1961) (emphasis added). *See also* Handbook of the National Conference of Commissioners on Uniform State Laws 323 (1932) (Commissioners' Prefatory Note to Uniform Narcotic Drug Act); I Working Papers of the National Commission on Reform of Federal Criminal Laws 343–50 (1970) (criticizing the soundness of the *Bartkus* line of decisions but not their doctrinal validity as a statement of the constitutional rules of double jeopardy); Fisher, *Double Jeopardy and Federalism,* 50 Minn.L.Rev. 607 (1966); Comment, 5 Cal.W.Int'l L.J. 399 (1975); Comment, 44 Minn.L.Rev. 534, 537 (1960). By asserting the "dubious vitality" of the *Bartkus* doctrine, the dissent impliedly endorses this view.

The second concern which appears to have prompted prohibitions against successive prosecutions is one of fundamental fairness—*i. e.,* that, completely apart from any constitutional limitation, a defendant should not be subjected to the harassment of a double prosecution for the same offense. *See* Department of Justice, Attorney General's Press Release at 3 (April 6, 1959) (establishing federal policy not to prosecute following state

prosecution); Comment, 5 Cal.W.Int'l L.J. 399, 409–11 (1975); Comment, 44 Minn.L.Rev. 534, 539 (1960). A moment's reflection leads to the conclusion that both these reasons for barring successive prosecutions have no application to simultaneous prosecutions. When federal and District of Columbia offenses are charged in one indictment and prosecuted in one trial, there is no additional harassment of the defendant; and, since jeopardy does not attach until the jury is sworn in, *see United States v. Shepard,* 169 U.S.App.D.C. 353, 358 n.7, 515 F.2d 1324, 1329 n.7 (1975), no claim of double jeopardy could attach when two charges are brought at the same time, even assuming the demise of the *Bartkus* rule. *See United States v. Knight,* 166 U.S.App.D.C. 21, 28, 509 F.2d 354, 361 (1974). This interpretation is analogous to that which, state law permitting, allows violations of both state statutes and municipal ordinances to be joined in a single indictment, *see, e. g., State v. Clark,* 291 Minn. 79, 189 N.W.2d 167 (1971) (construing Minn.Stat. § 609.035), despite the fact that successive prosecutions under those laws by the respective governments is prohibited by the double jeopardy clause of the United States Constitution. *Waller v. Florida,* 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970).

It is therefore our conclusion that the capacity of federal courts in the District of Columbia to join federal and District charges which emanate from the same sovereign in a *single* prosecution creates an adequate distinction between the District and those other federal jurisdictions that may be barred by policy considerations from prosecuting offenses previously tried by the states. This distinction was recognized by the National Commission on Reform of Federal Criminal Laws, which, in promulgating proposed revisions to the United States Code [later dropped, see discussion above] that would prohibit successive prosecutions by "local" and federal governments (or vice versa), stated:

"Local" is specifically defined here . . . in order to exclude those entities, such as the District of Columbia, which are treated as states for other purposes . . . . *For double jeopardy purposes, those entities are part of the same sovereign.*

Final Report of the National Commission on Reform of Federal Criminal Laws 63 (1971) (emphasis added) (comment to section 707). *See also id.* at 64 (comment to section 708). Thus, even an authority expressly relied on by the dissent has recognized that there is a rational basis for distinguishing between the District of Columbia and other jurisdictions for the purposes of a ban on dual prosecutions.

There then really is no equal protection issue in this case. The District is as much bound by the *successive* prosecutions bar of section 33–424 as in any state bound by similar legislation. It is only when we consider the matter of *simultaneous* prosecutions that a different result occurs in the District, and for good reason.

The simultaneous prosecution statute, D.C.Code § 11–502(3) (1973), is a normal response to the co-existence of two statutory schemes enacted by the same sovereign, and provides a reasonable basis for distinguishing the District from other federal jurisdictions. "The Constitution does not require situations 'which are different in fact or opinion to be treated in law as though they were the same.'" *Goesaert v. Cleary,* 335 U.S. 464, 466, 69 S.Ct. 198, 199, 93 L.Ed. 163 (1948), quoting *Tigner v. Texas,* 310 U.S. 141, 147, 60 S.Ct. 879, 84 L.Ed. 1124 (1940). *See also Reed v. Reed,* 404 U.S. 71, 75, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); *McDonald v. Board of Election Commissioners,* 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969); *F. S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920). Congress is not barred from enacting legislation for the District of Columbia merely because the situation which prompts it does not occur in other jurisdictions. It has plenary jurisdiction over the District of Columbia. U.S.Const. art. I, § 8, cl. 17. *Palmore v. United States,*

411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973); *Berman v. Parker,* 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954); *Gudmundson v. Cardillo,* 75 U.S.App.D.C. 230, 126 F.2d 521 (1942); *Sablowsky v. United States,* 101 F.2d 183 (3d Cir. 1938).

Furthermore, appellants have no valid present complaint arising from their exposure to the risk of jury verdicts on both federal and D.C. charges since they were only found guilty on the D.C. offenses and since the ultimate sentence was imposed only on the D.C. counts which involved only one statutory scheme.[7] Actually, when D.C.Code § 11–502(3) is considered in conjunction with the decisional law in this jurisdiction, forbidding the imposition of sentences according to more than one statutory scheme, *see* note 12 *infra,* the two rules together assure that punishment under both federal *and* local District statutes for the same offense will *never* be imposed. In some respects this favors D.C. offenders over offenders in other jurisdictions, since the latter may occasionally be subjected to dual prosecutions.

Appellants rely primarily on *United States v. Thompson,* 147 U.S.App.D.C. 1, 452 F.2d 1333 (1971), *cert. denied,* 405 U.S. 998, 92 S.Ct. 1251, 31 L.Ed.2d 467 (1972), where this court held that the post-conviction bail provisions of the District of Columbia Court Reform Act[8] applied only to persons convicted of local offenses and did not apply to persons convicted in the U.S. District Court under federal statutes when such bail would otherwise be available under the federal Bail Reform Act.[9] *Thompson* thus involved the proposed application of a D.C. statute to a federal offender. In contrast, the present case involves the application of D.C. statutes to persons who have committed offenses under D.C. law. On this basis *Thompson* is readily distinguishable from the instant case.

■ Having concluded that it is constitutional for the prosecution to join federal and District offenses, it only remains for us to determine whether the *particular statutes* in this case preclude such joinder for trial.

The federal narcotics statute under which appellants were indicted was enacted as part of the Comprehensive Drug Abuse Prevention and Control Act of 1970.[10] That Act was designed to deal with the problem of drug abuse "by providing for an overall balanced scheme of criminal penalties for offenses involving drugs." H.R.Rep.No.91–1444, 91st Cong., 2d Sess. 1 (1970), U.S.Code Cong. & Admin.News 1970, p. 4567. Appellants argue that prosecution jointly under federal and D.C. law frustrated this balanced scheme of penalties. However, there is no evidence that Congress intended this language to mean anything other than that the Act itself was internally consistent. The dissent's argument that Congress intended to establish a "carefully crafted hierarchy of penalties" is correct as far as it goes; but the legislative history makes it quite clear that this was a hierarchy of *federal* penalties:

> The purpose of this bill is to consolidate and rationalize the patchwork of existing legislation and to bring about some needed changes so that our basic *Federal* statutory tool is as effective and as up to date as possible. The bill represents a codification, a modernization, and a simplification of existing *Federal* narcotic and dangerous drug laws. But we are not merely redeco-

---

7. Appellants also argue that the joint prosecution deprived them of their right to a jury charge on the lesser included offense of simple possession (21 U.S.C. § 844) under Count 1 and thus deprived them of the lower maximum term for repeat offenders and the special probation, parole and record clearing provisions for first offenders under section 844(b). However, appellants would have been entitled to such a charge on the federal count, *see* Fed.R.

Crim.P. 31(c); *Keeble v. United States,* 412 U.S. 205, 208, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973), but they never requested that the charge be given.

8. D.C.Code § 23–1325(c).

9. 18 U.S.C. § 3148.

10. 21 U.S.C. § 801 *et seq.* (1970), 84 Stat. 1242 (1970).

rating the existing legal structure. Rather, we have laid a new foundation; enacted thereon a sound framework within which a firm but sensible *Federal* drug policy may be carried out, and we have topped it all with long-needed law enforcement tools.

116 Cong.Rec. 1633 (Jan. 28, 1970) (statement of Sen. Hruska during debate on S. 3246) (emphasis added). Sen. Dole also held this view:

> S. 3246 is not the entire answer to the problems and promise of drugs in America, but it provides a sound regulatory and law-enforcement basis for dealing with a matter of significant human concern.
>
> Other developments must be pursued in the fields of uniform State laws and international conventions, but we can provide valuable leadership by enacting this bill and *establish the Federal Government as an enlightened example* for our States and other members of the community of nations.

116 Cong.Rec. 1183 (Jan. 26, 1970) (debate on S. 3246) (emphasis added). Statements by other Senators and Congressmen confirm that the Act was intended to be comprehensive only insofar as the U.S.Code offenses were concerned. *See, e. g.,* H.R.Rep.No.91–1444, 91st Cong., 2d Sess., part I, at 6 (1970); 116 Cong.Rec. 1322 (Jan. 27, 1970) (statement of Sen. Montoya); 116 Cong.Rec. 33304, 33313, 33314 (Sept. 23, 1970) (statements of Reps. Rogers, Beall and Bush); 116 Cong.Rec. 33604 (Sept. 24, 1970) (statement of Rep. Robison). That this scheme of penalties does not prohibit a dual prosecution under local law as well as federal was perceived by Rep. Robison, who voiced his concern during floor debate on H.R. 18583:

> Although I am not familiar with all State laws dealing with penalties for the manufacture of drugs, I am familiar with the laws of a number of States that make the possession of drugs, and particularly marihuana, a felony. The pending legislation, in contrast, reduces penalties for possession to misdemeanors and, as I read

through the bill, I do not find any clear provision indicating the intention of the Congress as to whether the State laws on possession will be preempted. If they are not preempted, the situation could arise where a young person could be apprehended by Federal officials and charged with possession.

> Under the provisions of section 504, that individual could be placed on probation and, perhaps, have his record of conviction expunged. Enter the State—let us say on the next day, when this defendant still had one marihuana cigarette in his possession. Now, this young person could be subjected to the provisions of the State law making such possession a felony, with no provision for the expunging of the records. Not only would such subsequent—or prior—State prosecution defeat the purpose of the Federal law in expunging the records, but it would also be at variance with the new attitude of the Federal Government that we ought to lessen penalties for mere use of these controlled drugs.

> Thus, Mr. Chairman, if we do not preempt this field of dangerous drugs in its entirety—civil and criminal— much of the praiseworthy intent of this legislation, as it relates to possession and use of drugs, will be but an empty gesture, with possible State prosecution lurking just around the corner from every Federal prosecution. The concept of what not only amounts to a possible double prosecution, but also the frustration of the new Federal purpose, warrants such preemption being applied in these instances.

116 Cong.Rec. 33307 (Sept. 23, 1970). Mr. Robison's concern on this point was later answered by Rep. Springer in the following exchange:

> MR. ROBINSON:
>
> \* \* \* \* \* \*
>
> However, I think it ought to be made more clear than it has been, so far during this debate, that this more humane and realistic approach to the

question of penalties for mere use or possession of drugs, including marihuana, will have a very limited effect across the Nation. This is because we are revising and modernizing only the existing Federal laws in this regard and—if section 708 means what it seems to say—we have no intention of preempting existing State laws in this same regard. To this limited intent, then, has to be added the fact that, although there is an overlapping of jurisdiction, it is very rare that drug or marihuana use and possession cases come into Federal purview. . . .

Now, then, let me ask the ranking member on the Interstate and Foreign Commerce Committee, the distinguished and able gentleman from Illinois (Mr. Springer), if consideration was given in committee to this aspect of the bill's actual effect and, specifically, what problems would be involved if Congress were to seek to preempt State penal laws involving mere use or possession of controlled drugs.

MR. SPRINGER. May I say to the distinguished gentleman from New York that *we did not seek to preempt State laws and I think very wisely so.*

It is not possible for the Federal Government to have an agent in every community. . . . Enforcement for the most part at the local level will take place through the local law-enforcement agencies.

. . . .

116 Cong.Rec. 33605 (Sept. 24, 1970) (emphasis added). Mr. Robison went on to conclude that the new penalty scheme did not preempt state penalties but served as an example to states to encourage them to reform their own drug laws in similar fashion. This specific preservation of state penalties is expressed in section 708 of the Act, 21 U.S.C. § 903:

No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, *including criminal penalties,* to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.

(Emphasis added.) Since Congress has indicated that it considers the District of Columbia to be the analogue of a state for certain purposes,[11] it is reasonable to conclude that the Act was also not intended to occupy the field, including criminal penalties, to the exclusion of the D.C.Code. That conclusion is also buttressed by the refusal of Congress, despite its well recognized authority to do so, to legislate any restrictions on the application of the existing D.C. statutes on the same subject. While the Act specifically repealed or amended numerous prior federal statutes dealing with narcotics (*see* Act, section 701), no mention was ever made of the D.C. narcotics statutes. Finally, it is of considerable significance that the same session of Congress which adopted the revision of the federal narcotics statutes also revised D.C.Code § 33–423, the penalty provision of the D.C. Uniform Narcotics Drug Act. *See* Pub.L.No.91–358, § 208, 84 Stat. 603 (1970).

11. *See, e. g.,* D.C.Code § 11–503 which provides:

§ 11–503. Removal of cases from the Superior Court of the District of Columbia

A civil action or criminal prosecution in the Superior Court of the District of Columbia is removable to the United States District Court for the District of Columbia in accordance with chapter 89 of title 28, United States Code. (July 29, 1970, Pub.L. 91–358, § 111, title I, 84 Stat. 478.)

28 U.S.C. § 1451 provides:

§ 1451. Definitions.

For purposes of this chapter—

(1) The term "State court" includes the Superior Court of the District of Columbia.

(2) The term "State" includes the District of Columbia. (Added Pub.L. 91–358, title I, § 172(d)(1), July 29, 1970, 84 Stat. 591.)

In light of the legislative history and in the absence of any express statement of Congress to the contrary, we conclude that passage of the federal Drug Control Act did not prohibit prosecution of local narcotics offenders under the D.C.Code, even when both federal and local offenses are joined in the same indictment returned in the U.S. District Court.[12]

■ Appellants' final argument is that D.C.Code § 33–424 precludes conviction on the local narcotics count once the jury acquitted them on the federal charge. That section provides:

§ 33–424. Effect of acquittal or conviction under Federal narcotic laws.

No person shall be prosecuted for a violation of any provision of this chapter if such person has been acquitted or convicted under any United States statute governing the sale or distribution of narcotic drugs, of the same act or omission which, it is alleged, constitutes a violation of this chapter.

We conclude that the only reasonable interpretation of this language [13] is that it statute so as to make it consistent with other sections of that same statute or with other statutes. The rule does not, as is argued, presume against any interpretation of a statute which would view it as a codification of case law. Such codifications are frequent; indeed, much of our statute law has developed in this manner. The authorities given by the dissent say no different. *See* C. D. Sands, Statutes and Statutory Construction § 46.06 (4th ed. 1973). In *Jarecki v. G. D. Searle & Co.,* 367 U.S. 303, 307, 81 S.Ct. 1579, 6 L.Ed.2d 859 (1961), the Supreme Court construed a section of a statute so as to make it consistent with other sections of the same statute, while in *Morton v. Delta Mining, Inc.,* 495 F.2d 38, 42 (3d Cir. 1974), *cert. granted,* 420 U.S. 906, 95 S.Ct. 824, 42 L.Ed.2d 835 (1975), the court interpreted a section of the Federal Coal Mine Health and Safety Act to be consistent with the Administrative Procedure Act.

On the other hand, it is entirely unreasonable to view D.C.Code § 33–424, as does the dissent, as making improper the joinder of federal and District charges. *See* dissent at 833–836. The two narcotics laws violated here—one federal, the other a part of the D.C. Code—emanate from a common sovereign, much the same as do state statutes and municipal ordinances. *Cf. Waller v. Florida,* 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970). If local procedural statutes permit, as does D.C.Code § 11–502(3) here, there is no constitutional infirmity in charging all such offenses in a single indictment and trying them in a single trial. *See* text at 821–825 *supra.* The Congress and state legislatures have the power to provide that *all* offenses arising out of a common crime, federal and D.C., or state and local, must be tried jointly. *See* Note, *Twice in Jeopardy,* 75 Yale L.J. 262, 292–96 (1965). Moreover, any other interpretation for the District of Columbia would effectively overrule our decision in *United States v. Shepard,* 169 U.S.App.D.C. 353, 515 F.2d 1324 (1975), which upheld the validity of such a

---

**12.** This being so, *United States v. Canty,* 152 U.S.App.D.C. 103, 469 F.2d 114 (1972), is inapplicable here. *Canty,* as the dissent observes, was premised on the existence of a comprehensive scheme of penalties which by its very nature made resort to similar local charges improper. By contrast, the statute which presently concerns us in section 708, 21 U.S.C. § 903, not only affirmatively preserves state remedies but also recognizes concurrent enforcement of similar laws by state and local governments. *See* Statement of Cong. Springer at page 827, *supra.* It is therefore not at all improper, where the laws of two separate jurisdictions have been violated, for the offender to be charged in the same indictment under both local and federal statutes where the governmental organizations are so related as to make this possible. This is not like the situation in *Canty* where the prosecutor sought to add a local charge of assault with a deadly weapon to the comprehensive and peculiarly federal charges of aggravated bank robbery which necessarily included the assault charged.

Moreover, the *Canty* court was confronted particularly with a "pyramiding of sentences," *supra* at 117, 469 F.2d at 128, which resulted from the imposition of *consecutive* sentences for the federal and local convictions. It was the cumulative "punishment of Richardson for assault with a dangerous weapon *in addition to* bank robbery by force and violence [that the *Canty* court held] was, in our view, plain error." *Id.* Under our decision in *United States v. Knight,* 166 U.S.App.D.C. 21, 30, 509 F.2d 354, 363 (1974), however, which restricts sentences to offenses arising under one statutory scheme, this is not possible in the District of Columbia. *See also United States v. Shepard,* 169 U.S.App.D.C. 353, 365, 515 F.2d 1324, 1336 (1975).

**13.** The "well known canon of statutory construction" cited by the dissent in fact applies only to the interpretation of a section of a

precludes prosecution under D.C. statutes only where a defendant has been acquitted or convicted of the same narcotics offense *at a prior federal trial.* The statute does not prohibit the joinder of offenses under both federal and D.C. statutory schemes which are *simulta-* *neously* prosecuted in a joint indictment [14] and where two *different* offenses (possession with intent to distribute under the U.S.Code and simple possession under the D.C.Code) were involved.[15]

joinder as expressly provided for in D.C.Code § 11–502(3). It is not within the power of this division to overrule our prior decision; such change can be made only by this court sitting *en banc.* Since we continue to adhere to the' same view, we hold that D.C.Code § 33–424 bars only successive and not simultaneous prosecutions. Such interpretation is the only one that can reasonably give effect to both § 33–424 and § 11–502(3).

14. The two cases cited by the dissent do not convince us that the statute should be interpreted to bar simultaneous prosecutions of federal and D.C.Code offenses. *State v. Wortham,* 63 Ariz. 148, 160 P.2d 352 (1945), involved successive rather than simultaneous prosecutions. The state there had argued that successive prosecutions of the same offense under federal and then state law could be allowed despite the clear wording of the statute on the ground that the federal statute was a revenue measure and the state statute a penal law. In rejecting this argument, the court found the two statutory schemes to be "complimentary" [*sic*]—that is, the court found that both statutes were aimed at the "control and abolition of the traffic in narcotics," *id.* at 155, 160 P.2d at 355. A prior conviction under the federal statute would, under the Arizona statute, therefore bar state prosecution for the *same* offense. Since we are faced at present with neither successive prosecutions nor identical offenses, the *Wortham* case does not control our decision.

Nor does the decision of the Ninth Circuit in *Lewis v. United States,* 235 F.2d 580, 16 Alaska 341 (9th Cir.), *cert. denied,* 352 U.S. 897, 77 S.Ct. 136, 1 L.Ed.2d 89 (1956), change our view of the present case. In *Lewis,* the appellant had been convicted of *identical* violations of the Alaska Territorial Narcotic Drug Act and the federal Harrison Narcotic Act, and sentenced to *consecutive* terms. While the *Lewis* court did not make clear its reasons for dismissal of the territorial charges, it can be inferred that this was a reaction to the imposition of dual punishment for one crime—a violation of the "spirit" of double jeopardy. *See* text at 823, *supra.* This theory is supported by the action of the *Lewis* court in vacating only one count of the Alaska conviction (not, as the dissent states at pages 833–834, the entire conviction); the sentence as to the other count was allowed to remain in effect. The result in *Lewis* is thus in marked contrast to that which the dissent seeks here, that of having the *entire* sentence vacated even though no double punishment exists here and none would be possible in the District of Columbia for offenses tried simultaneously under federal law and the D.C.Code. *See* note 12 *supra.* Although it is true in the instant case that appellants might have received a lesser punishment if they had been convicted under a different statute, that in no way affects the validity of the manner in which they were actually prosecuted. They were convicted under District of Columbia law and their punishment is within statutory limitations.

Thus *Lewis,* like *Wortham,* fails to address the particular problem which this case presents. To say, as the dissent does, that the D.C.Code violation was charged as a lesser included offense to the federal narcotics charge is simply incorrect. The indictment shows them to have been charged as separate offenses, which in fact they were. *See* note 15 *infra.* Since one count charges possession only and the other possession with intent to distribute, they do not constitute prosecution for the "same act or omission" as required by D.C.Code § 33–424. *See* note 15 *infra.*

15. Under our holding in *United States v. Shepard,* 169 U.S.App.D.C. 353, 361–62, 515 F.2d 1324, 1332–33 (1975), the Government is not as a general principle prevented from simultaneously charging in one indictment offenses under similar federal and D.C. statutes arising from a single transaction. *See also United States v. Knight,* 166 U.S.App.D.C. 21, 28, 509 F.2d 354, 361 (1974). Each offense here arises under a separate regulatory provision—one federal, one essentially local in scope—different in time and design from the other. We therefore reject any contention that the two charges merged. *See United States v. Upthegrove,* 504 F.2d 682, 688 n. 10 (6th Cir. 1974).

It should also be noted that, far from being a lesser included offense of the federal statute, the crime of "possession" of narcotics under the D.C. statute covers all forms of "possession" cumulatively and *includes* "possession with intent to distribute." The D.C. statutory scheme thus does not make a separate offense out of the more specialized "possession with intent to distribute." In this respect under the D.C.Code "possession" of narcotics includes the federal offense of possession with intent to distribute and is distinctly a *greater* offense than the crime of simple possession under the

## III.

Neither appellant returned to the courtroom at the time set by the trial court after the luncheon recess on the first day of the trial (Tr. 106), and the court informed the jury that the case would continue in their absence (Tr. 108). Appellant Jones reappeared shortly thereafter (Tr. 111), but appellant Bryant did not return and the trial continued in his absence without objection from counsel for either appellant. Bryant surrendered to the Marshal's office on the third day of trial and was brought into the courtroom immediately after the jury retired to consider its verdict (Tr. 442–43). In its instructions to the jury, the court stated that they were not to be prejudiced against either Bryant or Jones because of Bryant's failure promptly to return for trial and that they were not to draw any inferences as to Bryant's guilt from his absence (Tr. 427).

 Jones now argues that he was unduly prejudiced by the continuation of the trial in the absence of his codefendant. However, the instructions given by the trial court were adequate to eliminate any prejudicial consequences to Jones. *See United States v. Henderson,* 472 F.2d 157 (6th Cir. 1973). In addition, any prejudice was waived by his counsel's failure to raise an objection at trial.

For the foregoing reasons, the judgment appealed from is

Affirmed.

J. SKELLY WRIGHT, Circuit Judge (dissenting):

Section 11–502(3) of the District of Columbia Code extends the criminal jurisdiction of the United States District Court for the District of Columbia to local offenses which are "joined in the same information or indictment with any Federal offense." In recent years the United States Attorney's use of this jurisdictional provision to combine charges under both local and federal statutory schemes in order to seek maximum penalties greater than would be available under either scheme alone has raised difficult questions of equal protection, *see, e.g., United States v. Shepard,* 169 U.S.App.D.C. 353, 367–68, 515 F. 2d 1324, 1338–39 (1975) (Bazelon, C. J., concurring); *United States v. Knight,* 166 U.S.App.D.C. 21, 27–28, 509 F.2d 354, 360–361 (1974) (*per curiam*), and of construction of both local, *see, e. g., United States v. Greene,* 160 U.S.App.D.C. 21, 489 F.2d 1145 (1973), and federal laws, *see, e. g., United States v. Canty,* 152 U.S.App.D.C. 103, 469 F.2d 114 (1972)

---

U.S.Code, 21 U.S.C. § 844(a) (1970), which, by virtue of the federal statutory scheme, excludes the offense of possession with intent to distribute. The penalty for possession under the D.C.Code is three times as great as that provided for simple possession under the U.S. Code (assuming, in each case, a prior offense). *Compare* D.C.Code § 33–423 (1973) *with* 21 U.S.C. § 841(b) (1970). In another respect, however, the crime of possession under the D.C.Code is a *lesser* (but not included) offense than possession with intent to distribute under the U.S.Code because the D.C.Code provides for a lesser maximum punishment: for the first offense of possession with intent to distribute which would be prosecuted as unlawful "possession" under the D.C.Code the maximum imprisonment is set at one year, while the U.S.Code allows a maximum of 15 years; in the event the offender has been previously convicted, the respective limits are 10 and 30

years. *Compare* D.C.Code § 33–423 (1973) *with* 21 U.S.C. § 841(b) (1970). It is therefore clearly wrong to term charges brought both under the D.C.Code and under the U.S.Code as "the same" or "an included" offense. The mere fact that the local offense of "possession" uses the same word as the federal statute and includes similar federal offenses does not preclude its joinder with other federal counts in one indictment and trial, *cf. Shepard, supra,* 169 U.S.App.D.C. at 362–63, 515 F.2d at 1333–34, as the statutory scheme of each defines "possession" in different terms.

Of course, a defendant in the District of Columbia may ultimately be sentenced under only one statutory scheme. *See* note 12 *supra.* The present situation is thus distinguishable from that which existed in *Upthegrove, supra,* where a defendant was sentenced under two provisions of the federal narcotics law.

(*per curiam*). The present appeal involves all of these issues.

Appellants were tried in the District Court on an indictment charging possession of heroin with intent to distribute in violation of federal law (Count 1). They were also charged with simple possession of heroin (Count 2), destruction of evidence (Count 3), and maintaining a common nuisance (Count 4), all in violation of District of Columbia law.[1] The fourth count was dismissed, and appellants were acquitted by the jury on Count 1. They were found guilty on Counts 2 and 3, however, and were sentenced to concurrent terms of 20 months to five years for possession and one to three years for destroying evidence.

D.C. law does not differentiate between simple possession and sale of narcotics, providing a maximum sentence of ten years imprisonment and a $5,000 fine.[2] Federal law, on the other hand, punishes possession of heroin with intent to distribute by a maximum sentence of 30 years and a fine of not more than $25,000 and simple possession with a maximum penalty of two years imprisonment and a $10,000 fine.[3] Thus, by combining statutory provisions, the prosecution in this case was able to put the defendants at risk of the heavy federal punishment for possession with intent to distribute while preserving the possibility that if the greater offense could not be proved, the defendants would be subject to the D.C. rather than to the federal penalty for the lesser included offense of simple possession.

Had appellants been charged with simple possession of narcotics in any federal court outside the District of Columbia, they would have been subject to a maximum penalty for simple possession of heroin of two years imprisonment and a $10,000 fine. The disparity between this maximum and the possible 10 years in prison and $5,000 fine to which they might have been sentenced under the District's possession provision forms the basis for appellants' claim that the combination of federal and local charges violated their right to equal protection of the laws. I believe their claim raises a substantial question concerning the constitutionality of the Government's action in this case. In addition, I agree with appellants that their conviction on the D.C. charge is prohibited by 33 D.C.Code § 424 (1973).[4] Finally, I believe this court's decision in *United States v. Canty, supra*, requires at least that we reduce appellants' prison terms for possession of heroin to the maximum sentence provided by federal law.[5]

### The Equal Protection Claim

Appellants' equal protection claim is easy to understand: unlike defendants in any other federal District Court, they were faced with the possibility of being sentenced to 10 years in prison for possession of heroin. The sentences they received provide maximum prison terms two and a half times as severe as could be imposed under congressional enactment for possession of heroin in any other federal court. Thus the jurisdictional provision contained in 11 D.C.Code

1. The federal charge was brought under 21 U.S.C. § 841(a) (1970). The local charges were brought under 33 D.C.Code § 402 (1973) (possession), 23 D.C.Code § 591(a) (1973) (destruction of evidence), and 33 D.C.Code § 416 (1973) (maintaining a common nuisance).

2. 33 D.C.Code § 423(b) (1973) provides this penalty for violators of 33 D.C.Code § 402, *see* note 1 *supra*, who have previously been convicted of a narcotics offense, *see* note 3 *infra*.

3. Simple possession is prohibited by 21 U.S.C. § 844(a) (1970). Since both appellants had previously been convicted of narcotics offenses, the maximum penalty under § 844(a)

would have been double the one year in prison and $5,000 fine provided for first offenders. Possession with intent to distribute is proscribed in 21 U.S.C. § 841(a), which also provides increased penalties for second offenders.

4. *See* p. 832 *infra*.

5. The only challenge to the destruction of evidence conviction is brought by Jones, who contends that he was prejudiced by continuation of the trial during the absence of codefendant Bryant. I agree with the majority that this contention, raised for the first time on appeal, is without merit.

§ 502(3) (1973), as applied in this case, created an invidious discrimination based solely on the fact that the trial occurred within the District of Columbia.[6]

The majority opinion dismisses this argument "on the basis of our opinion in *Shepard, see* 169 U.S.App.D.C. at 363 n.25, 515 F.2d at 1335 n.25." Majority op. at 820. The cited footnote states:

> Our holding eliminates any argument that prosecution under both statutes is a denial of equal protection. A defendant is subject to only a single trial in this district and there are no possible adverse consequences due to being found guilty under both federal and D.C. law since he can ultimately be sentenced under only one statutory scheme.

It is obvious, however, that being put at risk of receiving a prison term five times as great, and actually receiving a sentence two and a half times as great, as a defendant in any other federal District Court might receive is an "adverse consequence." Thus the footnote in *Shepard* and the majority's reliance on it in this case make sense only on the assumption that outside the District of Columbia a defendant could be tried on a federal narcotics charge and then be tried by the state for a violation of its own narcotics laws arising from the same act. This assumption depends on the continu-

ing vitality of the doctrine that the double jeopardy clause is not violated by successive prosecutions by different sovereigns (the state and the federal government) even though both trials involve the same criminal act. *See Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959).

Whatever the current strength of the *Bartkus* rule might be,[7] that doctrine cannot be applied to this case. Forty-eight of the 50 states[8] have adopted either the Uniform Narcotic Drug Act or the Uniform Controlled Substances Act, both of which contain provisions[9] similar to 33 D.C.Code § 424:

> § 33–424. *Effect of acquittal or conviction under Federal narcotic laws.*
>
> No person shall be prosecuted for a violation of any provision of this chapter if such person has been acquitted or convicted under any United States statute governing the sale or distribution of narcotic drugs, of the same act or omission which, it is alleged, constitutes a violation of this chapter.

The bar to dual prosecutions is accepted by 42 states in addition to the District of Columbia.[10] Only in the District of Columbia, among all of the jurisdictions whose local legislatures have chosen to adopt the double jeopardy provision of

---

6. The discrimination is not shielded from judicial examination simply because it arises from the operation of a jurisdictional statute.

 The government should not be permitted to accomplish through discriminatory jurisdiction what it cannot do through discriminatory statutory coverage. * * * To hold otherwise would allow the government to run roughshod over the Fifth Amendment in the name of jurisdictional sacrosanctity, employing jurisdiction as an inviolate tool.

 *United States v. Antelope*, 523 F.2d 400, 405 (9th Cir. 1975), *petition for cert. filed*, 44 U.S. L.Week 3281 (Nov. 3, 1975) (No. 75–661).

7. "This court is of the view that even this long settled doctrine is of dubious vitality * *." *United States v. Knight*, 166 U.S.App.D.C. 21, 27 & nn.13–14, 509 F.2d 354, 360 & nn.13–14 (1974). *But cf. Robinson v. Neil*, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973) (referring to but not repudiating dual sovereignty doctrine);

*Waller v. Florida*, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970) (same).

8. *See* 9 Uniform Laws Annotated (ULA) 24, 146 (Supp.1975). The Uniform Narcotic Drug Act is in force in the District of Columbia and seven states, while the more recent Uniform Controlled Substances Act is the law in 41 states as well as the Virgin Islands and Puerto Rico. Only New Hampshire and Vermont have adopted neither Uniform Act.

9. Uniform Controlled Substances Act § 405; Uniform Narcotic Drug Act § 21.

10. Of the seven states which still utilize the Uniform Narcotic Drug Act, only Maine has not adopted the dual prosecution bar. Georgia, Hawaii, Indiana, Kentucky, and Montana have adopted the Uniform Controlled Substances Act without barring prosecutions under both state and federal laws. *See* 9 ULA 307–308; *id.* 76–77 (Supp.1975).

the uniform laws,[11] is it possible for an individual to be brought to trial on both federal and state narcotics charges for the same act.[12] Operation of 11 D.C. Code § 502(3) to create this anomaly clearly discriminates against individuals tried in the District of Columbia.[13] Since I am convinced that the joint prosecution and the resulting increased sentence in this case were improper under both local and federal law, I find it unnecessary to determine whether the prosecution was also unconstitutional.

*Section 33–424 of the D.C.Code*

Appellants also contend that 33 D.C. Code § 424 prohibits their joint trial on federal and local narcotics charges. The majority opinion dismisses appellants' ar-

gument by concluding that Section 424 "precludes prosecution under D.C. statutes only where a defendant has been acquitted or convicted of the same narcotics offense *at a prior federal trial.*" Majority op. at 829 (emphasis in original). I can find no support for this conclusion.

The majority's approach is directly contrary to the decision of the only other federal appellate court which has been called upon to interpret the meaning of the Uniform Narcotic Drug Act's double prosecution bar in the context of a single trial under both federal and local drug laws. *See Lewis v. United States,* 235 F.2d 580 (9th Cir.), *cert. denied,* 352 U.S. 897, 77 S.Ct. 136, 1 L.Ed.2d 89 (1956). In *Lewis* both the court and the Govern-

11. The majority misconstrues this discussion as suggesting that District residents are denied equal protection because District laws differ from the laws of other states. Majority op. at 823. My point is the converse of the argument refuted by the majority: District law is the same as the law in the 42 other jurisdictions which have adopted the prosecution bar of the Uniform Acts. Yet only in the District, of all the states with this uniform provision, can a defendant be brought to trial on charges of violating both local and federal narcotics laws. This possibility exists not because the District narcotics laws differ from other states' but because of the United States Attorney's use, approved today, of a jurisdictional provision whose history contains no indication that it was intended to alter the accepted uniform pattern of prosecuting drug offenders under a federal or a local drug law, but not under both.

12. These state laws do not, of course, prevent the federal government from trying an individual on a narcotics charge arising from the same act for which he had previously been tried by the state. However,

it is Department policy that after a State prosecution there should be no Federal trial for the same act or acts unless there are compelling Federal interests involved, in which case prior authorization should be obtained from the appropriate Assistant Attorney General having jurisdiction over the subject matter of the case.

Department of Justice, United States Attorneys' Manual, tit. 2 at 5 (1970). *See* 1 Working Papers of the National Commission on Reform of Federal Criminal Laws 346–347 (1970). Despite the majority's suggestion that the Justice Department's policy cannot form the basis of an equal protection claim, majority op. at

822–823, this court has recognized that "the realistic consideration * * * that except in unusual or emergency cases there is no sound warrant for multiple federal and state convictions even assuming constitutional authority" can raise an issue of constitutional dimension. *United States v. Knight, supra* note 7, 166 U.S.App.D.C. at 28, 509 F.2d at 361.

13. The harm to the defendants, I repeat, lies in their exposure to the mixture of federal and local penal schemes, and the added risk of a lengthy sentence which that exposure creates. The majority's emphasis on the fact that only one trial is possible in the District because of double jeopardy considerations, majority op. at 820, 825, neither justifies nor explains away the inequality created by subjecting District of Columbia defendants to this increased risk.

The majority seems to have difficulty understanding the meaning of the word "risk." *See* majority op. n.6. The concept is not difficult: at the beginning of their trial these defendants, unlike individuals charged with possession of narcotics with intent to distribute in federal courts outside the District of Columbia, faced the possibility that if the jury acquitted them of that charge, they might still be sentenced to up to 10 years for simple possession. Appellants were thus in a worse position than similarly situated individuals outside the District. In short, they faced a greater risk because they had more to lose from a jury verdict acquitting them of the greater charge but finding them guilty of the lesser.

Nothing in this concept of risk or in my opinion suggests that I have adopted the "sporting theory of justice," *id.,* so thoroughly discussed and refuted by the majority.

ment itself considered untenable the interpretation adopted by the majority here:

> The Alaska statute prohibits prosecution thereunder if the accused has been "acquitted or convicted under the Federal Narcotic laws for the same act or omission, which, it is alleged, constitutes a violation of this Act." Appellee [the Government] suggests that the prohibition might not apply where the same offense is charged under Federal and Alaska law concurrently. However, *characterizing this argument as one of "doubtful worth"* appellee cites a decision from the Supreme Court of Arizona, State v. Wortham, 63 Ariz. 148, 160 P.2d 352, and concedes that the conviction * * * is within the prohibition of the Alaska statute and that the conviction under Count I should be vacated.

235 F.2d at 581 (emphasis added). Accordingly, the Ninth Circuit vacated the Alaska conviction. It is true that in *Lewis* the court vacated a local law conviction which duplicated a federal conviction whereas here we are asked to reverse a local conviction because of a federal acquittal, but the statutory language does not allow us to attach any significance to this factual distinction.

*State v. Wortham,* cited in *Lewis v. United States, supra,* provides the rationale for *Lewis* in the Arizona Supreme Court's explanation that the "State Uniform Narcotic Act is complimentary [*sic*] to the laws of our federal government in the control and abolition of the traffic in narcotics." 63 Ariz. at 155, 160 P.2d at 355. This understanding of the purpose of the Uniform Acts is supported by the Prefatory Notes of the Commissioners on Uniform State Laws. *See* 9 Uniform Laws Annotated 146, 524 (1973). The double jeopardy provisions of the Uniform Acts further this purpose by insuring that the state laws do not become mere adjuncts of the federal laws.

The majority attempts to dissipate the force of these precedents by arguing that *Lewis* and *Wortham* involved prosecutions for the same offense, whereas the federal charge of possession with intent to distribute and the local charge of possession involved in the present case do not concern "the same act or omission" within the meaning of 33 D.C. Code § 424. Majority op. at 829 & note 14. Neither case permits the majority's attempted distinction. In *Wortham* the court held that a federal indictment charging (1) importation of marihuana without registering or paying the appropriate tax and (2) acquiring as a transferee and possessing bulk marihuana without paying the tax charged the same offense as a state information alleging illegal possession under the Arizona Uniform Narcotic Act. The basis for the court's conclusion was that "[b]oth charges are based upon the same act—possession of the same marihuana." 63 Ariz. at 155, 160 P.2d at 355. Similarly, the Ninth Circuit in *Lewis* found that the federal charge and the local charge for violation of the Alaska Territory's Uniform Narcotic Drug Act involved the same offense because "[t]he date of the offense is the same, the same individuals are defendants and the possession of the same type of narcotic is alleged." 235 F.2d at 581. Here, too, the federal and local charges involve the same narcotics in the possession of the same defendants on the same day. There is no basis for concluding that the federal and local charges do not involve "the same act or omission" within the meaning of the Uniform Narcotics Act in force in the District of Columbia.[14]

---

14. *See also State v. Krell,* 125 N.J.Super. 457, 311 A.2d 399 (1973) (finding, *inter alia,* state charge of simple possession barred by federal charges of conspiracy to distribute and to possess with intent to distribute and of possession with intent to distribute).

Appellants also argue that the prosecutor's decision to charge simple possession under local law in Count 2 deprived them of their right, recognized by the majority, majority op. n.7, to a jury instruction on the lesser included federal offense of simple possession under Count 1. The majority responds to this claim by stating that appellants would have been entitled to such an instruction if they had requested it. *Id.* Thus the majority concedes

The majority's interpretation of Section 424 also fails to follow the well known canon of statutory construction that requires a statute to "be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." 2A D. Sands, Sutherland Statutory Construction § 46.06 (4th ed. 1973). *See, e. g., Jarecki v. G. D. Searle & Co.,* 367 U.S. 303, 307, 81 S.Ct. 1579, 6 L.Ed.2d 859 (1961); *Morton v. Delta Mining, Inc.,* 495 F.2d 38, 42 (3d Cir. 1974), *cert. granted,* 420 U.S. 906, 95 S.Ct. 824, 42 L.Ed.2d 835 (1975). It is well settled, and has been since long before Congress enacted Section 424, that the double jeopardy clause of the Fifth Amendment protects an individual from being tried for the same act before two tribunals which derive their authority from the United States. *Grafton v. United States,* 206 U.S. 333, 354–355, 27 S.Ct. 749, 51 L.Ed. 1084 (1907). This constitutional restriction prohibits successive trials under local and federal law for the same act in the District of Columbia. *E. g., United States v. Shepard, supra,* 169 U.S.App.D.C. at 360, 515 F.2d at 1331; *United States v. Knight, supra,* 166 U.S. App.D.C. at 27–28, 509 F.2d at 360–361. According to the majority's interpretation of Section 424, that provision adds nothing to this well established constitutional rule. Since the majority's reading transforms Section 424 into a mere redundancy, it should be rejected.

In the present case the prosecutor has charged violation of the D.C. narcotics law as a lesser included offense to a charge of violation of the federal narcotics law.[15] This action, which treats the D.C. law as subsidiary rather than complementary to the federal law, is forbidden by Section 424 interpreted in accordance with the only relevant precedent, the purpose of the section, and the canons of statutory construction. Since the joinder of charges was improper, the conviction for possession should be reversed.

By interpreting Section 424 as I think we must, we would require the United States Attorney for the District of Columbia to choose whether to prosecute alleged narcotics violators under local or federal law. In *United States v. Shepard, supra,* we stated that forcing such a choice as a general rule would be contrary to the intent of Congress that the local and federal statutory schemes "mesh together." We recognized, however, that we must examine the particular statutes in question to determine whether, in a specific case, the prosecutor should be required to choose. *See* 169 U.S.App.D.C. 361–63, 515 F.2d at 1332–1334. In this case Congress has embodied in Section 424 a requirement that the narcotics prosecutions be brought under either federal or D.C. law, but not both.[16]. Since this congressional-

that alert trial counsel could nullify today's ruling by requesting an instruction on the federal lesser included offense, thereby precluding a second conviction for the same offense under local law.

15. The majority views it as "simply incorrect" to say that the local possession offense was charged as a lesser included offense to the allegation of possession with intent to distribute. Majority op. n.15. It is clear, however, that the participants in the trial considered the local count to be a lesser included offense of the federal count. Thus the District Judge instructed the jury that the charge of simple possession could be considered only if the defendants were found not guilty of the greater charge of possession with intent to distribute. Tr. at 439. Similarly, the jury was told that it could convict the defendants on the possession

count if it found two of the three elements necessary for conviction on the charge of possession with intent to distribute. *Id.* at 429–433. That simple possession is separately specified in an indictment does not change its character as a lesser included offense to the crime of possession with intent to distribute. The majority's general discussion of the relationship of the local possession statute to the federal statute completely ignores the way the local charge was used in *this* case.

16. The choice *between* statutory schemes is strictly a matter of prosecutorial discretion. *Hutcherson v. United States,* 120 U.S.App.D.C. 274, 345 F.2d 964 (1965); *id.* at 279–280, 345 F.2d at 969–970 (Burger, J. concurring) ("there is no substantial difference between allowing the United States Attorney for the District of Columbia to proceed *either* under the munici-

ly imposed limitation on the United States Attorney in the District of Columbia is no different from the limitation imposed on prosecutors by most states,[17] I see no reason to shy away from enforcing it.

*The Doctrine of* United States *v.* Canty

In *United States v. Canty, supra,* this court held improper the United States Attorney's decision to charge the defendants with bank robbery with force and violence in violation of 18 U.S.C. § 2113(a) and assault with a dangerous weapon in violation of 22 D.C.Code § 502. The prosecutor had drafted the indictment to charge both local and federal violations rather than the federal crime of committing an assault with a dangerous weapon while robbing a bank (18 U.S.C. § 2113(d)) in order to increase the possible maximum penalty. We vacated the conviction on the local assault charge. Finding that "[t]he federal bank robbery statute establishes a comprehensive scheme for prosecuting and punishing persons who rob federally-insured banks," we held that the prosecutor could not, "[b]y venturing outside the federal scheme, * * * circumvent the scheme's carefully crafted hierarchy of penalties." 152 U.S.App.D.C. at 116–117, 469 F.2d at 127–128. Since the prosecutor has done here exactly what we said he could not do in *Canty,* the sentences must be vacated.

The majority rejects application of *Canty* primarily because the federal narcotics law specifically preserves state narcotics laws. Majority op. at 825–828 & note 12. The statutory disavowal of any congressional intent to preempt state laws dealing with narcotics does not, however, deal with the problem on which *Canty* focuses. All that the statute does is state that the federal narcotics law is not intended to prevent prose-

cution under applicable state laws. I do not challenge this proposition, and in *Canty* itself we also recognized that the existence of a comprehensive statute did not prevent enforcement of applicable state criminal law. 152 U.S.App.D.C. at 117–118 n.20, 469 F.2d at 128–129 n.20. The entirely separate question decided by *Canty* and raised here is whether allowing a federal prosecutor to bring simultaneous charges under *both* federal and local statutes contravenes Congress' purpose in establishing a "carefully crafted hierarchy of penalties."

The majority recognizes that the House Report on the Comprehensive Drug Abuse Prevention Control Act of 1970, under which appellants were prosecuted, identified "providing for an overall balanced scheme of criminal penalties for offenses involving drugs" as one of the Act's three methods for dealing with the problem of drug abuse. H.R.Rep.No. 91–1444, 91st Cong., 2d Sess., 1 (1970), *quoted in* majority op. at 825. However, the majority attaches no weight to this statement since "there is no evidence that Congress intended this language to mean anything other than that the Act itself was internally consistent." *Id.* I disagree.

Although the Act as it was finally enacted into law was a House bill, its enforcement and penalty provisions originated in S. 3246 sponsored by Senator Dodd. As he was explaining his proposal, Senator Dodd emphasized the importance of the bill's scheme of penalties:

In summation, Mr. President, I believe that the one part of S. 3246 which takes the biggest and best step forward with respect to drug control is the new penalty structure we have proposed.

116 Cong.Rec. 1654 (1970). Senator Hruska emphasized the care with which the bill's penalties had been structured:

pal *or* the federal legislation in his discretion and allowing his counterpart in a state to bring a federal action or to defer to state authorities" (footnote omitted; emphasis added)).

17. *See* note 12 *supra.*

These changes in the penalty structure were not decided upon arbitrarily, but were the result of careful examination of the relevant facts. The Subcommittee to Investigate Juvenile Delinquency has for several years followed the drug abuse problem very closely, receiving testimony from persons knowledgeable in all aspects of the problem. * * *

The evidence which we have received shows that the severe penalties imposed under existing laws have failed to deter drug abuse. In fact, the opposite is true. * * *

 * * * * * *

Mr. President, I hasten to add that while the penalty provisions contained in this bill are tough, they are also rational and credible. The penalties are tailored to fit the crime and the person who committed that crime.

*Id.* at 1664. Several other senators emphasized the significance of the bill's systematic approach to penalties and their hope that by rationalizing the penalty structure the bill would improve law enforcement.[18]

When the House considered H.R. 18583, which became the Act, the central importance of the rationalization of criminal penalties, and reduction of penalties for simple possession, received even greater stress than in the Senate. Representative Springer emphasized the importance of rationalization:

It is not as though there has been no drug law up to this point. The biggest problem may be caused by the fact that there have been many drug laws which have come about under different circumstances and with entirely separate and diverse histories.

 * * * * * *

Everyone is interested in the revised penalties included in the bill. Upon inspection some say enforcement has been weakened. Others say just the opposite. The idea of the changes was to create more flexibility in the handling of the first offenders and those who might actually be salvaged, while bearing down with great intensity upon the pusher and the peddler.

116 Cong.Rec. 33299, 33300 (1970). Similarly, Representative Bush noted that "[t]he penalties in this bill are not only consistent with each other, but with the rest of the Federal criminal law—something which cannot be said for present drug laws." *Id.* at 33314. Congressman Boland pointed to the reduction in penalties for possession: [19]

One of the most striking features of the new penalty structure is that illegal possession of a controlled drug for one's own use is a misdemeanor. * * * This section on simple possession violations reflects the judgment of most authorities that harsh penalties have little deterrent value and often ruin the life of an individual involved. *It is unfortunate that the Federal Government rarely has cases of simple possession within its jurisdiction so that this kind of sensible statute could apply. It is hoped that it may serve as an example to the States as they reform their own drug abuse laws.*

*Id.* at 33316 (emphasis added).[20] Representative Weicker explained the law en-

---

18. *See, e. g.,* 116 Cong.Rec. 1011 (1970) (remarks of Sen. Young); *id.* at 1183 (remarks of Sen. Dole); *id.* at 1323 (remarks of Sen. Montoya); *id.* at 1666 (remarks of Sen. Cook).

19. Prior to enactment of the 1970 law, 21 U.S.C. § 174 (1964) provided that unexplained *possession of a narcotic drug would be sufficient evidence to allow a conviction for illegally importing that drug into the United States. Section 174 provided a sentence for first offenders of not less than five or more than 20

years imprisonment and a possible fine of up to $20,000. Second offenders were to be sentenced to not less than ten or more than 40 years, and could also be fined up to $20,000.*

20. The majority appears to believe that congressional expressions of hope that the states would follow the federal lead support its conclusion that the joinder of charges in this case does not violate the intent of Congress. *See* majority op. at 825–828. I cannot understand the logic of this transmogrification of

forcement benefit which rationalization of penalties would secure:

> To me, however, the areas of this bill which deserve primary emphasis are the penalty and enforcement provisions, since these are the areas which have been most in need of reform. The penalty structure has been designed to accommodate all types of drug offenders, from the casual drug user and experimenter to the organized criminal syndicates engaged in unlawful importation and distribution of illicit drugs. But what is most important about this penalty structure is that it is credible in that the penalties fit the crimes and the persons who commit the crimes. By being credible, this law will be enforceable, which is not the case today with existing law.

*Id.* at 33631. Virtually every congressman who spoke on the bill sounded one or more of these themes.[21]

Thus it is clear that Congress attached great importance to the "carefully crafted hierarchy of penalties" established by the Comprehensive Drug Abuse Prevention and Control Act of 1970, and especially to the reduction in penalties for simple possession of narcotics.[22] *Canty* teaches that it is our duty to preserve the congressionally established structure by rejecting the prosecutor's attempt to circumvent the Act's sentencing provisions. Since appellants in this case were sentenced to maximum prison terms two

and a half times as great as the Act provides, we cannot, consistently with *Canty*, allow their sentences under the possession count to stand.

I respectfully dissent.

---

congressional desire for the states to rationalize their drug laws along the lines established by the new federal statute into support for the United States Attorney's disruption of the orderly scheme of the federal law.

21. *See, e. g.,* 116 Cong.Rec. 33296 (1970) (remarks of Rep. Madden); *id.* at 33297 (remarks of Rep. Smith); *id.* at 33299 (remarks of Rep. Jarman); *id.* at 33304 (remarks of Rep. Rogers); *id.* at 33307 (remarks of Rep. Robison); *id.* at 33311 (remarks of Rep. Clancy); *id.* at 33313–33314 (remarks of Rep. Beall); *id.* at 33315 (remarks of Rep. MacGregor); *id.* at 33318 (remarks of Rep. Skubitz); *id.* at 33647 (remarks of Rep. Sisk); *id.* at 33650 (remarks of Rep. Keith); *id.* at 33651 (remarks of Rep. Brotzman); *id.* at 33652 (remarks of Rep. Broomfield); *id.* at 33653 (remarks of Rep. An-

derson); *id.* at 33654 (remarks of Rep. Donohue); *id.* at 33656 (remarks of Rep. Hogan); *id.* at 33658 (remarks of Rep. Cohelan); *id.* at 33659 (remarks of Rep. Pickle).

22. As the majority notes, Congress did not alter the D.C. statute when it enacted the Comprehensive Drug Abuse Prevention and Control Act of 1970, and the same session of Congress also revised the penalties provided under the D.C. law. However, these facts suggest only that Congress wished the prosecutor to have a choice; they in no way indicate that Congress wished a single individual to be subject to the conflicting penalty provisions of both statutes. It is noteworthy, in this connection, that the same Congress which revised the D.C. law's penalties also left untouched 33 D.C.Code § 424 (1973).